JOURNAL ENTRY and OPINION
{¶ 1} Appellant William Moviel appeals his sentence and his adjudication as a sexual predator. Moviel assigns the following errors for our review:
"I. Defendant was denied due process of law when his pleas of guilty were induced by misinformation concerning post-release control."
"II. Defendant was denied due process of law when the court did not determine defendant understood the nature of the offenses and did not enter pleas of guilty to all offenses."
"III. Defendant was denied due process of law when he was improperly sentenced to a period of three years of post-release control at sentencing."
"IV. Defendant was denied due process of law when defendant was sentenced on facts not alleged in the indictment nor admitted by defendant."
"V. Defendant was denied due process of law when he was sentenced to consecutive sentences which amounted to eight years for felonies of the third degree."
"VI. Defendant was denied due process of law when he was adjudicated to be a sexual predator."
"VII. Defendant was denied due process of law and effective assistance of counsel when he entered pleas of guilty to gross sexual imposition which failed to allege an offense."
 {¶ 2} Having reviewed the record and pertinent law, we affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion. We uphold the defendant's guilty plea and conclude that any misstatements by the trial court at the plea hearing regarding post-release control were harmless. We vacate the consecutive sentence because the trial court failed to make the necessary findings. The apposite facts follow.
 {¶ 3} Moviel worked as Service Director for the City of Lyndhurst and drug counselor for two fifteen year-olds, who were enrolled in Alcoholics Anonymous' twelve-step program. The two youths worked part-time for the city of Lyndhurst.
 {¶ 4} The record reveals that when the minors adhered to the precepts of the twelve-step program, Moviel rewarded them by furnishing pornographic videos. Moviel, along with the minors, would masturbate while watching the videos. When the minors did not attend counseling sessions, Moviel punished them by swatting their buttocks with a paddle. After swatting the boys with the paddle, Moviel would rub their bare buttocks. On some occasions, Moviel took pictures of the boys' bare buttocks.
 {¶ 5} On November 16, 2004, the Cuyahoga County Grand Jury indicted Moviel on three counts of disseminating obscene matter to juveniles; two counts of illegal use of minor in nudity-oriented material and/or performance; two counts of gross sexual imposition; two counts of public indecency; and, one count of possessing criminal tools.
 {¶ 6} On December 3, 2004, Moviel pled not guilty at his arraignment. Thereafter, Moviel entered into a plea bargain with the State, and on February 9, 2005, pled guilty to all ten counts, which included several counts that were amended. The trial court subsequently referred Moviel to the probation department for the purpose of preparing a pre-sentence investigative report. Moviel was also referred to the court's psychiatric clinic for the preparation of a psychiatric report for classification as a sexually-oriented or sexual predator.
 {¶ 7} On March 14, 2005, the trial court determined Moviel to be a sexual predator. Thereafter, the trial court sentenced Moviel to four years each for counts two and three, which charged him with the illegal use of a minor in nudity oriented material and/or performance. The trial court ordered the sentences served consecutively.
 {¶ 8} The trial court also sentenced Moviel to eleven months each on counts one, six, eight, and ten, which charged him with disseminating obscene matter to juveniles. This sentence was to be served concurrently to the sentence imposed for counts two and three of the indictment. Further, the trial court sentenced Moviel to seventeen months on counts four and five, which charged him with gross sexual imposition. This sentence was also to be served concurrently to the sentence imposed for counts two and three. Finally, as part of the sentence, the trial court imposed three years of post-release control.
 GUILTY PLEA {¶ 9} We begin our discussion with the second assigned error. Moviel argues the trial court did not properly determine that he understood the nature of the offenses; thus, his guilty pleas were not knowingly, intelligently, or voluntarily made. We disagree.
 {¶ 10} In resolving whether a criminal defendant knowingly, intelligently, and voluntarily entered a plea, our query is whether the trial court adequately guarded constitutional or non-constitutional rights promised by Crim.R. 11(C).[1] The applicable standard of review depends upon which right or rights the appellant raises on appeal. We require strict compliance if the appellant raises a violation of a constitutional right delineated in Crim.R. 11(C)(2)(c); alternatively, if the appellant raises a violation of a non-constitutional right found in Crim.R. 11(C)(2)(b), we look for substantial compliance.
 {¶ 11} Presently, Moviel alleges the trial court violated non-constitutional rights by "misleading or coercing" him into pleas. Consequently, we resolve Moviel's assigned error by determining whether the trial court substantially complied with Crim.R. 11(C).
 {¶ 12} As stated by the Ohio Supreme Court:
"Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. Furthermore, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect. The test is whether the plea would have been made otherwise."[2]
 {¶ 13} It is not always necessary that the trial court advise the defendant of the elements of the crime, or to specifically ask the defendant if he understands the charge, so long as the totality of the circumstances are such that the trial court is warranted in making a determination that the defendant understands the charge.[3]
 {¶ 14} Here, a review of the record indicates that the trial court substantially complied with Crim.R. 11(C). The following exchange took place prior to Moviel entering his plea:
"The Court: Now, the charges under the indictments you'regoing to plead guilty to are different degrees of felonies and amisdemeanor. Apparently count one, count six, count eight, andcount ten are felonies of the fifth degree. Now there's apresumption you would not be incarcerated on felonies of thefifth degree, but I don't know what Judge Saffold is going to do.There's some instances where this presumption is overcome. Shouldshe decide to send you to prison, she could send you on each andevery one of those counts for a period of anywhere between sixand twelve months in a state penal institution. She could pickout any one of those months. There could be a fine possibly, notto exceed $2,500 in each count. And upon your release, you wouldbe subject to what we call post-release control which is likeparole for a period of up to three years. That's reducible at thediscretion of the parole board. Do you understand that?
 The Defendant: Yes, your Honor.
 The Court: Now, you're also going to plead guilty to thesecond and third counts and there is an attempt statute that isamended to make this an attempt to use — to illegally use a minoror of a minor in nudity-oriented material, performance, thingslike that, both those counts. And that's a period between — we'vegot two different youngsters. One was born in February of 96 andthe other September 96. These are felonies of the third degree;these would be felonies of the second degree, and that'sdiscretionary on the part of the court as to what they wantregards to sentencing. You could get community-control, but youalso could receive a prison term between one and five years. Anyone of those terms could be picked out, one, two, three, four,five years. You could receive a fine not to exceed I think it's$10,000.
 Mr. Kocian: $7,500
 The Court: $7,500, on either one of those counts. Do youunderstand that.
 The Defendant: Yes, your Honor.
 The Court: And also you're going to plead guilty to grosssexual imposition which is a felony of the fourth degree andthat's in count four and five and those are — the presumption isyou would not be incarcerated on those. You have to alsounderstand I don't know what Judge Saffold is going to do. Onthose counts you could receive anywhere from between six andeighteen months. Any of those months could be picked out, to astate penal institution, fine not to exceed $5,000, and you couldbe subject to what they call post-release control and those arefor a period of three years. And then again, number seven youhave a public indecency charge which is a misdemeanor of thefirst degree. That's probationable but you could receive up to —actually that's count nine also, so it's the seventh and ninthcount of public indecency. You could receive up to six months incounty jail, a fine not to exceed a thousand dollars. Do youunderstand that?
 The Defendant: Yes, your Honor.
 The Court: And finally, the eight and the tenth counts arefelonies of the fifth degree where you could receive anywherebetween six and twelve months, a fine not to exceed $2,500, onany one of those. Do you understand that all? The Defendant:Yes.
 The Court: And your lawyer has told you all this?
 The Defendant: Yes.
 The Court: Is there anything about this case or theseproceedings you don't understand or want me to explain morefully?
 The Defendant: No, your Honor."[4]
 {¶ 15} The above plea colloquy indicates the trial court made an exhaustive attempt to ascertain that Moviel had a clear understanding of the charges and possible penalties before accepting the guilty pleas. The trial court asked Moviel five different times if he understood the charges against him and the possible penalties. Each time Moviel stated that he understood, and also indicated that his attorney had also explained the charges and possible penalties. The trial court even asked if Moviel wanted the court to explain any aspect of the case or the proceeding more fully, and Moviel indicated he did not. Thereafter, Moviel admitted in open court that he was in fact guilty of the offense with which he was charged.
 {¶ 16} Based on the record before this court, the totality of the circumstances indicate the trial court was warranted in making a determination that Moviel understood the charges against him and the possible penalties and thus, knowingly, intelligently, and voluntarily entered his pleas. Accordingly, we overrule Moviel's second assigned error.
 POST-RELEASE CONTROL {¶ 17} We will address Moviel's first and third assigned errors together, because central to both is the issue of post-release control. Here, Moviel contends that his guilty pleas were induced by misinformation regarding post-release control, and, further, he was denied due process of law when the trial court improperly sentenced him to three years of post-release control.
 {¶ 18} R.C. 2943.032(E) requires that, prior to accepting a guilty plea for which a term of imprisonment will be imposed, the trial court must inform a defendant regarding post-release control sanctions in a reasonably thorough manner.[5]
Post-release control constitutes a portion of the maximum penalty involved in an offense for which a prison term will be imposed.[6]
 {¶ 19} In support of his argument, Moviel cites to various opinions from this court.[7] Those cases are distinguishable. In each case, the trial court failed to advise the defendant entirely that post-release control sanctions applied once the sentence was served.
 {¶ 20} In addition, Moviel cites to State v.Gulley.[8] This is also distinguishable. In its plea colloquy, the trial court in Gulley told the defendant:
"Once you've served your time, the parole board will decide whether or not they want to place you on Post-Release Control, what we used to call `parole.' If they do place you on Post-Release Control, and you violate the conditions [of] that control, you can be sent back to the penitentiary. Do you understand that?".[9]
 {¶ 21} In the instant case, the following exchange took place when Moviel entered his pleas:
"The Court: And is this a felony of the s-would that be onewhere they would have a post-release control up to five years orit would be three years?
 Mr. Sheehan: I believe it's three but I'm not —
 The Court: It's not a rape or a-let's just suggest it could beup to five years. I think it's only going to be up to three yearsyou would be on post-release control which is like parole for aperiod of that, for that period of time. Do you understand that?
 The Defendant: Yes, your Honor.
 The Court: It could be three or five years. That's not goingto change your plea, is that correct?
 Mr. Kocian: That's correct, your Honor.
 The Court: And also you're going to plead guilty to grosssexual imposition which is a felony of the fourth degree andthat's in count four and five and those are-the presumption isyou would not be incarcerated on those. You have to alsounderstand that I don't know what Judge Saffold is going to do.On those counts you could receive anywhere from between six andeighteen months . . . and you can be subject to what they callpost-release control again and those are for a period of threeyears . . . Do you understand.
 The Defendant: Yes, your Honor."[10]
 {¶ 22} Here, the record is clear that the trial court informed Moviel that he would be subject to post-release control once his sentence was served. And, unlike Gulley, the record is devoid of any indication that the trial court conveyed the idea that the period of post-release control would be discretionary. However, the record reveals that the trial court misstated the period of post-release control as three years, instead of the mandatory period of five years for one charged with a felony sex offense.
 {¶ 23} Despite the trial court's misstatement, the record is clear that Moviel was aware that post-release control would be part of his sentence. Further, through his attorney, Moviel informed the trial court that whether the period of post-release control was three years or five years, it would not impact his decision to plead guilty. Consequently, Moviel's guilty pleas were knowingly, intelligently, and voluntarily made. Therefore, the trial court's misstatement was not prejudicial.
 {¶ 24} At his sentencing, Moviel appeared before a different trial judge, who imposed a three year period of post-release control. During oral argument of this case, the State conceded the trial court imposed the incorrect sentence. The sentence in this case is a mandatory five years, and as such, we accept the State's concession. Consequently, we remand this matter to the trial court for it to correctly impose the statutory maximum of five years for one charged with a felony sex offense. Accordingly, Moviel's first and third assigned errors are sustained.
 BLAKELY {¶ 25} In the fourth assigned error, Moviel argues his sentence was based on facts not alleged in the indictment nor admitted by him; therefore, his sentence is unconstitutional according to the U.S. Supreme Court's decision in Blakely v.Washington.[11] We disagree.
 {¶ 26} In Blakely, the United States Supreme Court held a trial court may not extend a defendant's sentence beyond the statutory maximum when the facts supporting the enhanced sentence are neither admitted by the defendant nor found by the jury.[12]
 {¶ 27} In the instant case, in addition to eight other charges, Moviel pled guilty to two counts of attempted illegal use of a minor in nudity oriented material and/or performance, which are third degree felonies. Pursuant to R.C. 2929.14(A)(3), the prison term range for a third-degree felony is one, two, three, four, or five years. The trial court sentenced Moviel to a prison term of four years on each count, which was within the statutory limit. Thus, as long as a criminal defendant is sentenced to a prison term within the stated minimum and maximum terms permitted by law, criminal sentencing does not run afoul ofBlakely and the Sixth Amendment.[13]
 {¶ 28} Moreover, this issue has been addressed in this court's en banc decision of State v. Atkins-Boozer.[14]
In Atkins-Boozer, we held that R.C. 2929.14(B), which governs the imposition of minimum sentences, does not implicate the Sixth Amendment as construed in Blakely. Accordingly, in conformity with that opinion, we reject Moviel's contentions and overrule his fourth assigned error.
 CONSECUTIVE SENTENCE {¶ 29} In the fifth assigned error, Moviel argues his consecutive sentence was improper because it exceeded the maximum sentence for a third degree felony. We agree.
 {¶ 30} In imposing consecutive prison terms for convictions of multiple offenses, the trial court must make certain findings enumerated in R.C. 2929.14(E)(4). According to this statute, a court may impose consecutive sentences only when it concludes that the sentence is (1) necessary to protect the public from future crime or to punish the offender; (2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) the court finds one of the following: (a) the crimes were committed while awaiting trial or sentencing, under sanction or under post-release control; (b) the harm caused by multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of the offense; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime.[15] When the trial court makes the above findings, it must state on the record its reasons for the findings.[16]
 {¶ 31} In the instant case, in imposing consecutive sentences, the trial court stated:
"On the two felony threes, the sentence of the Court, on each case, is 250 and costs, four years at Lorain Correctional Institution. Those sentences will be consecutive. The Court makes a finding that the harm caused was great and unusual, and the Court reiterates, the impact your offenses have had upon both of these families impacts the gravity of it."[17]
 {¶ 32} Although, it can be surmised from the excerpt above, and elsewhere in the record, that a consecutive sentence was permissible, a trial court must clearly align each rationale with the specific finding to support its decision to impose consecutive sentences.[18] Here, the trial court stated on the record that it found the consecutive sentence necessary, because the harm caused was great and unusual. This pronouncement satisfies the last prong of the R.C. 2929.14(E) requirements. However, despite ample evidence in the record, the trial court failed to find that the sentence was necessary to protect the public from future crime or to punish the offender. In addition, the trial court did not find that the sentence was not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.[19]
Therefore, because the trial court failed to engage in the requisite analysis pursuant to R.C. 2929.14(E)(4) in imposing the consecutive sentence, Moviel's fifth assigned error has merit and is sustained.
 SEXUAL PREDATOR CLASSIFICATION {¶ 33} In the sixth assigned error, Moviel argues he was denied due process when the trial court classified him as a sexual predator. We disagree.
 {¶ 34} R.C. Chapter 2950 defines three classifications of sex offenders: sexual predators, habitual sexual offenders, and sexually oriented offenders.[20] To earn the most severe designation of a sexual predator, the defendant must have been convicted of or pled guilty to committing a sexually oriented offense and must be likely to engage in the future in one or more sexually oriented offenses.[21]
 {¶ 35} The trial court must determine by clear and convincing evidence that the offender is a sexual predator.[22] Clear and convincing does not mean clear and unequivocal; rather, it refers to "that measure or degree of proof, which will produce in the mind of the trier of the fact a firm belief or conviction as to the facts sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases."[23] As a reviewing court, we must examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.[24]
 {¶ 36} R.C. 2950.09(B)(2) requires that the trial court take into consideration all relevant factors in making a sexual predator determination, including those enumerated in the statute.
 {¶ 37} Pursuant to R.C. 2950.09(B)(2), in making a determination as to whether an offender is a sexual predator, the trial court must consider all relevant factors, including but not limited to the following: the offender's age and prior criminal record, the age of the victim, whether the sexually-oriented offense involved multiple victims, whether the offender used drugs or alcohol to impair the victim, whether the offender completed any sentence imposed for any conviction, whether the offender participated in available programs for sexual offenders, any mental disease or disability of the offender, whether the offender engaged in a pattern of abuse or displayed cruelty toward the victim, and any additional behavioral characteristics that contribute to the offender's conduct.[25]
 {¶ 38} The trial court may place as much or as little weight on any of the factors as it chooses; the test is not a balancing one. Nor does the trial court have to find the majority of the factors to be applicable to defendant in order to conclude the defendant is a sexual predator.[26]
 {¶ 39} We conclude the record sufficiently supports Moviel's sexual predator classification. First, the court ordered a psychiatric evaluation of Moviel. Moviel was given a battery of tests, which assumed that Moviel answered truthfully. The evaluation revealed a twelve percent chance of re-offending in five years, a fourteen percent chance of re-offending in ten years, and a nineteen percent chance of re-offending in fifteen years. Second, the court considered that there were two victims, who were fifteen years of age. Third, the trial court stated that Moviel appeared to over-identify with adolescent males.
 {¶ 40} Based on a review of the record, we conclude the trial court's finding was based on sufficient evidence. The trial court properly classified Moviel as a sexual predator. Accordingly, we overrule the sixth assigned error.
 INEFFECTIVE ASSISTANCE OF COUNSEL {¶ 41} In his seventh assigned error, Moviel argues he was denied the effective assistance of counsel when he entered guilty pleas to gross sexual imposition which failed to allege an offense. We disagree.
 {¶ 42} In order to prevail on a claim of ineffective assistance of counsel, the appellant must show trial counsel's performance fell below an objective standard of reasonableness and such performance resulted in undue prejudice.[27] An essential element of an ineffective assistance of counsel claim is a showing that, but for trial counsel's alleged errors, there is a substantial probability that the outcome of the trial would have been different.[28]
 {¶ 43} In the instant case, the grand jury indicted Moviel under R.C. 2907.05(A)(4), which provides:
(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
* * *
(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
 {¶ 44} Moviel now argues that since the two victims were over the age of thirteen, no offense is alleged, therefore, he could not have knowingly, intelligently, or voluntarily entered a plea of guilt. We are not persuaded.
 {¶ 45} We have previously concluded that Moviel knowingly, intelligently, and voluntarily pled guilty to ten separate offenses. Pertinent to this assigned error, the record reveals that Moviel was fully aware of the victims' ages and his actions when he pled guilty to the two counts of gross sexual imposition.
 {¶ 46} The record also reveals, and the State acknowledges, that the indictment referenced the incorrect subsection, which should have been amended pursuant to Crim.R. 7. However, Moviel was not prejudiced by the State's failure to amend the indictment. The trial court specifically advised Moviel that he was pleading guilty to two fourth degree felonies.
 {¶ 47} Morever, Moviel failed to raise the alleged defect in the indictment prior to entering his guilty pleas. Therefore, Moviel waived any error with respect to the indictment by pleading guilty to the offenses as alleged in the indictment.[29]
 {¶ 48} Based on the record before us, it is conclusive that Moviel knew the nature of the offense to which he pled guilty, despite the reference to the incorrect subsection on the indictment. Accordingly, we overrule Moviel's seventh assigned error.
Judgment affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
This cause is affirmed in part, reversed in part and remanded.
It is ordered that appellant and appellee share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Ann Dyke, A.J., and Kenneth A. Rocco, J., concur.
[1] State v. Nero (1990), 56 Ohio St.3d 106.
[2] Id.
[3] State v. Rainey (1982), 3 Ohio App.3d 441, 442; State v.Calvillo (1991), 76 Ohio App.3d 714.
[4] Tr. 7-11.
[5] See Woods v. Telb, 89 Ohio St.3d 504, 2000-Ohio-171.
[6] Id.
[7] State v. Paris (Nov. 10, 2004), Cuyahoga App. No. 83519,2004-Ohio-596; State v. Griffin, Cuyahoga App. No. 83724 at 7,2004-Ohio-4344, citing State v. Jones (May 24, 2001), Cuyahoga App. No. 77657; State v. Perry, Cuyahoga App. No. 82085,2003-Ohio-6344, P10.
[8] (Sept. 2, 2005), 1st Dist No. C-040675,2005-Ohio-4592.
[9] Id.
[10] Tr. at 9-10.
[11] (2004), 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403.
[12] Id.
[13] See, State v. Hardie, 4th Dist. No. 04CA24,2004-Ohio-7277. See, also, State v. Wilson, 4th Dist. No. 04CA18, 2005-Ohio-830; State v. Ward, 4th Dist. No. 04CA25,2005-Ohio-1580.
[14] Cuyahoga App. No. 84151, 2005-Ohio-2666.
[15] R.C. 2929.14(E).
[16] State v. Gary (2001), 141 Ohio App.3d 194.
[17] Tr. at 35.
[18] State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165.
[19] R.C. 2929.14(E).
[20] State v. Cook (1998), 83 Ohio St.3d 404 at 407, 1998-Ohio-291.
[21] R.C. 2950.01(E).
[22] R.C. 2950.09(B)(4).
[23] State v. Eppinger, 91 Ohio St.3d 158, 2001-Ohio-247, quoting Cross v. Ledford (1954), 161 Ohio St. 469, 477.
[24] Cross, supra.
[25] R.C. 2950.09(B)(2)(a) through (j).
[26] State v. Fugate (Feb. 2, 1998), 12th Dist. No. CA97-03-065.
[27] State v. Madrigal, 87 Ohio St.3d 378, 397, 2000-Ohio-448, reconsideration denied (2000), 88 Ohio St.3d 1428, citing Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258,111 L.Ed.2d 768.
[28] State v. Lindsey, 87 Ohio St.3d 479, 489, 2000-Ohio-465, reconsideration denied (2000), 88 Ohio St.3d 1438.
[29] See State v. Hedgecock (May 11, 1998), 12th Dist. No. CA97-08-022; State v. Lopez, 2nd Dist. No. 99-CA-120, 2003-Ohio-3974, P14; State v. Rogers (Mar. 23, 1994), 4th
Dist. No. 548.