OPINION
{¶ 1} Daryl Cochran appeals from the denial of his motion to withdraw his guilty plea in the Clark County Court of Common Pleas. For the following reasons, the trial court's judgment will be affirmed. *Page 2 
 {¶ 2} On February 15, 2000, Cochran entered a negotiated plea of guilty to murder, aggravated robbery, and tampering with evidence, arising out of an incident on October 22, 1999. In his plea agreement, Cochran agreed to sentences of fifteen years to life in prison for the murder, ten years in prison for aggravated robbery, and five years in prison for tampering with evidence, to be served consecutively for an aggregate sentence of thirty years to life in prison. In return, the state agreed to dismiss the charge of aggravated murder. On February 24, 2000, the trial court considered the factors set forth in R.C. 2929.11
and R.C. 2929.12 and made findings pursuant to R.C. 2929.14(B) and R.C.2929.14(C), as required by the then-existing statutory sentencing scheme. The trial court sentenced Cochran to an aggregate term of thirty years to life in prison, as agreed by the parties. Cochran did not appeal from his conviction or sentence.
 {¶ 3} On May 6, 2002, Cochran requested a copy of all transcripts in this case. In September 2004, he wrote to the clerk of court seeking information about wiretaps that were conducted during the investigation of his case. The record does not indicate any response to either request.
 {¶ 4} On July 12, 2005, Cochran filed a motion for "reconsideration of sentence pursuant to Crim.R. 32.1 and[/]or motion for post-conviction relief pursuant to new constitutional ruling." In his motion, Cochran acknowledged that there was no error in the plea process "but only in the sentencing process." He thus sought vacation of his sentence and a new sentencing hearing, citing Apprendi v. New Jersey (2000),530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, and Blakely v. Washington (2004),542 U.S. 296, 159 L.Ed.2d 403, 124 S.Ct. 2531. Cochran also asserted that his trial counsel was ineffective for failing to inform him that *Page 3 
he could challenge his sentence by way of appeal and by failing to appeal his non-minimum consecutive sentence.
 {¶ 5} On October 13, 2005, Cochran withdrew his motion to vacate his sentence and filed a motion to withdraw his plea. In this motion, Cochran claimed that he pled guilty to offenses more severe than he had actually committed due to his trial counsel's deficient performance. Cochran stated that the state elicited statements from him after he had invoked his right to counsel, in violation of his Fifth Amendment rights, and that his counsel had failed to seek suppression of those statements. Cochran further claimed that he did not knowingly waive his right to have a jury determine the facts necessary for the imposition of non-minimum and consecutive sentences. In support of his motion, Cochran submitted an excerpt of his interrogation by Sergeant Eggers and Detective Estepp, which was typed by Marjorie Crider, and the report by Sergeant David Rapp regarding a recorded visit by Rebecca McDargh to Cochran while he was incarcerated in the Clark County Jail, both of which occurred on November 19, 1999.
 {¶ 6} The state opposed Cochran's motion, arguing that there was no alleged error in the plea proceeding and that Cochran merely asserted that he would have negotiated a better plea with a shorter sentence. The state noted that a substantial period of time had passed since Cochran's plea and that Cochran should have pursued redress through other means.
 {¶ 7} On August 8, 2006, the trial court overruled Cochran's motion to withdraw his plea, reasoning:
 {¶ 8} "The Court finds that the matters Cochran raises here could have been raised on direct appeal or in a petition for post-conviction relief. As the time for filing either has long *Page 4 
passed, the matters are barred by res judicata.
 {¶ 9} "In addition, Cochran's claims do not have merit. As to his first allegation, Cochran has not identified what statements he believes were obtained illegally. Further, it is unclear whether he made any incriminating statements that, if suppressed, would have prevented the state from proving his guilt at trial. Even if that were the case, the transcript he attached to his motion fails to show that he invoked his right to counsel when questioned. Also, any statements he made to the informant who visited him at the jail would not likely be subject to suppression because of the lack of a reasonable expectation of privacy in such circumstances.
 {¶ 10} "Likewise, Cochran's ineffective assistance claim lacks merit. Given that the allegations that statements were obtained illegally is specious, the Court cannot conclude that counsel['s] failure to file a motion to suppress was objectively unreasonable or that Cochran was prejudiced thereby.
 {¶ 11} "Last, the principles enunciated in Apprendi were not applicable in Ohio Courts until the Ohio Supreme Court's decision inState v. Foster[, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470]. That decision limited its retroactive application to cases then pending on direct appeal. Because Cochran's time for appeal has long since passed, the decision in Foster is not availing to him." (Footnotes omitted).
 {¶ 12} Cochran appeals from the denial of the motion to withdraw his plea.
 {¶ 13} A motion to withdraw a plea of guilty or no contest is governed by Crim.R. 32.1, which states: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." After sentencing, *Page 5 
a motion to withdraw a guilty plea is permitted "only in extraordinary cases." State v. Smith (1977), 49 Ohio St.2d 261, 264, 361 N.E.2d 1324.
 {¶ 14} Cochran raises five assignments of error on appeal.
 {¶ 15} I. "THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT ALTERNATIVE REMEDIES WERE AVAILABLE TO APPELLANT AND ERRONEOUSLY APPLYING RES JUDICATA TO HIS ISSUES."
 {¶ 16} Cochran claims that the trial court erred in determining that a petition for post-conviction relief or direct appeal were available to challenge the issues presented and, thus, his motion to withdraw his plea was precluded by res judicata. He further claims that res judicata may not be used as an automatic bar to the investigation of violations of a defendant's constitutional rights in a criminal case.
 {¶ 17} "Under the doctrine of res judicata, a valid, final judgment rendered upon the merits bars all subsequent actions based on any claim that was the subject matter of the previous action. (Internal citation omitted). The bar applies to all claims that were raised and determined in the previous action or which could have been raised or determined."State v. Wolford (Sept. 17, 1999), Miami App. No. 99CA10; State v.Spencer, Clark App. No. 2006-CA-42, 2007-Ohio-2140. Because petitions for post-conviction relief are separate civil proceedings, a petition for post-conviction relief may be barred by a conviction in a prior criminal action due to res judicata. Spencer at ¶ 12. In contrast, because Crim.R. 32.1 motions are filed in the same criminal proceeding as the criminal conviction, res judicata does not apply. Id. Accordingly, the trial court erred in applying the doctrine of res judicata as a basis for denying Cochran's Crim.R. 32.1 motion. This error is harmless, however, given our disposition of the remaining *Page 6 
assignments of error.
 {¶ 18} The first assignment of error is overruled.
 {¶ 19} II. "THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT APPELLANT'S FIFTH AND SIXTH AMENDMENT RIGHTS WERE NOT VIOLATED BY THE BREACH OF MIRANDA AND HIS REQUEST FOR COUNSEL BY STATE AGENTS."
 {¶ 20} III. "THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT APPELLANT'S TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO CHALLENGE THE ILLEGALLY OBTAINED STATEMENTS ELICITED FROM APPELLANT IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS."
 {¶ 21} Next, Cochran claims that the police elicited statements from him after he had invoked his right to counsel, and that his attorney rendered ineffective assistance when he failed to seek suppression of those statements.
 {¶ 22} In order to demonstrate ineffective assistance of counsel, Cochran must establish that his counsel's representation fell below an objective standard of reasonableness and that he has been prejudiced by his counsel's deficient performance. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. "Reversal of a conviction for ineffective assistance of counsel `requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" State v. Hand,107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d. 151, at ¶ 199. Moreover, "[t]he defendant must show that there is a reasonable *Page 7 
probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."Strickland, 466 U.S at 694; Bradley, 42 Ohio St.3d at 142.
 {¶ 23} Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. SeeStrickland, 466 U.S. at 689. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. Id.;State v. Parker, Montgomery App. No. 19486, 2003-Ohio-4326, ¶ 13.
 {¶ 24} The record reflects that Cochran's counsel did not file a motion to suppress. However, as noted by the trial court, Cochran has not identified any particular inculpatory statements that were made after the alleged invocation of his right to counsel. The transcript of his interrogation by Eggers and Estepp ends after the discussion of hisMiranda rights and whether he wished to invoke his right to counsel; it does not contain any statements he may have made that may have been inculpatory. Moreover, we are unable to discern from the record the extent — if any — that the state's case against him would have relied upon those alleged statements. Cochran has not provided evidence that he made statements that affected his plea in any way. Accordingly, Cochran has not demonstrated that he suffered any prejudice due to his counsel's failure to file a motion to suppress.
 {¶ 25} Moreover, Cochran's motion does not demonstrate that he would have prevailed on a motion to suppress. In his motion, Cochran provided a transcript of his interrogation on November 19, 1999, which stated, in pertinent part: *Page 8 
 {¶ 26} Q: "As a matter of — what we do, before we talk to you, we've got to read you your rights, got to do that with everybody, okay. You can read and write okay? I'm gonna read this to you. If you will follow along. Before you are asked any questions you must understand your rights.
 {¶ 27} "1. You have the right to remain silent. Anything you say can be used against you in court.
 {¶ 28} "2. You have the right to talk to a lawyer for advice before we ask you any questions and have him with you during questioning.
 {¶ 29} "3. If you cannot afford to hire a lawyer, one will be appointed for you before any questioning if you wish.
 {¶ 30} "4. If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time.
 {¶ 31} "5. You also have the right to stop answering at any time until you talk to a lawyer.
 {¶ 32} Q: "Do you understand. Underneath that it says `I have read this statement of my Rights or I have been informed orally of my Rights and I understand what my rights are. I'm willing to make a statement and answer questions at this time without the services of a lawyer. I understand and know what I am doing. No promises or threats have been made to me. No pressure or coercion of any kind has been used against me. Do you agree with that?
 {¶ 33} A: "Why are you guys coming to me with this though?
 {¶ 34} Q: "Well, we heard through the grapevine and through our investigation that you may have known Tony. *Page 9 
 {¶ 35} A: "I've never known him personally.
 {¶ 36} Q: "But do you know of him?
 {¶ 37} A: "I've heard his name.
 {¶ 38} Q: "Okay, well that's, that's basically what we want to talk about. We're just talking to everybody that may be able to shed some light on what happened to him. I mean you obviously can stop talking to us any time you feel like you need to.
 {¶ 39} A: "Oh I mean goddamn if I stop talking to you guys, looks like something to hide here. I just wonder should I talk to my lawyer first?
 {¶ 40} Q: "That's up to you. You know I can't advise either way on that.
 {¶ 41} A: "Well I don't know, I think I should talk to my lawyer first. I'll tell you now, all I know is I've heard his name — that's about it. Never seen the guy don't know anything about him.
 {¶ 42} Q: "If you saw the man, you wouldn't even know who he is?
 {¶ 43} A: "No.
 {¶ 44} Q: "Why would — how about Darryl McDargh, you know Darryl McDargh?
 {¶ 45} A: "Yes, I do.
 {¶ 46} Q: "Because Darryl McDargh seemed to know him pretty well.
 {¶ 47} A: "He did?
 {¶ 48} Q: "Yeah. But anyway, before we can go any further I need you to sign that if you want. If you want to talk to us. We just have some things we need to clear up, that's it.
 {¶ 49} A: "So am I under investigation for any of this?
 {¶ 50} Q: "We simply heard that you were a friend of Darryl McDargh's and we're *Page 10 
looking at Darryl McDargh for some things and we wanted to find out if you knew Tony. We've been pulling in people the last three or four days, talking to everybody.
 {¶ 51} A: "Well (inaudible).
 {¶ 52} Q: "I mean like I said, any time you want to quit talking you just say so and we'll stop, all right.
 {¶ 53} A: "What is the date today?
 {¶ 54} Q: "Nineteenth. Just because you're in jail — you're free to go anytime you want, okay.
 {¶ 55} A: "Okay.
 {¶ 56} Q: "You're obviously free to go back over there.
 {¶ 57} A: "I am, really.
 {¶ 58} Q: "* * *."
 {¶ 59} Based upon this evidence, we agree with the trial court that the transcript fails to demonstrate that Cochran invoked his right to counsel. As we stated in State v. Myers, Darke App. No. 1643,2006-Ohio-1604, "[w]hether a suspect has invoked his right to counsel is an objective inquiry. [Edwards v. Arizona (1981), 451 U.S. 477, 484-85,101 S.Ct. 1880, 68 L.Ed.2d 378; United States v. Davis (1994),512 U.S. 452, 458, 114 S.Ct. 2350, 129 L.Ed.2d 362]. A request for an attorney must be clear and unambiguous such that a reasonable police officer in the circumstances would understand the statement to be an invocation of the right to counsel. Davis, 512 U.S. at 459; see State v. Murphy,91 Ohio St.3d 516, 520, 2000-Ohio-112, 747 N.E.2d 765. The Supreme Court of Ohio has held that the statement `I think I need a lawyer' was not an unequivocal assertion of the right to counsel. State v. Henness (1997), *Page 11 
79 Ohio St.3d 53, 63, 679 N.E.2d 686. `Don't I supposed to have a lawyer present' has also been found to be ambiguous. State v. Brown,100 Ohio St.3d 51, 56, 2003-Ohio-5059, 796 N.E.2d 506. `If a suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him.' Davis, 512 U.S. at 461-62;Brown, 100 Ohio St.3d at 56, 796 N.E.2d 506. Moreover, the officers have no obligation to ask clarifying questions to ascertain if the suspect is attempting to invoke his right to counsel. Davis, supra." Myers
at ¶ 66.
 {¶ 60} Neither of Cochran's references to a lawyer — "I just wonder should I talk to my lawyer first" and "I think I should talk to my lawyer first" — constituted an unambiguous request for counsel, particularly when read in context. Accordingly, Cochran's evidence does not demonstrate that the officers' continued interrogation of him was in violation of his Fifth Amendment rights.
 {¶ 61} Cochran further argues that the state circumvented his invocation of his right to counsel when it recorded a conversation between Cochran and Rebecca McDargh at the Fourth Floor Visitation Area of the Clark County Jail. According to Rapp's report, McDargh had contacted the sheriffs department and informed officers that she would like to talk with Cochran about the murder and provide them with information. Officers placed video and audio surveillance equipment at the attorney booth of the visitors area and recorded the conversation between McDargh and Cochran. As with his police interrogation, this conversation occurred on November 19, 1999.
 {¶ 62} Cochran asserts that his conversation with Rebecca McDargh violated Edwards, which requires the police or their agents to cease their interrogation after the invocation of the *Page 12 
right to counsel. "[A]n accused, * * * having expressed his desire to deal with the police only through counsel, [may not be] subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards,451 U.S. at 484-85. However, even assuming that McDargh was acting as an agent of the state, Cochran has not presented a basis under Edwards to suppress statements made during his conversation with McDargh as he had not previously invoked his right to counsel. Furthermore, the record does not disclose what, if anything, Cochran said to McDargh that may have been inculpatory. Accordingly, Cochran has not demonstrated that his counsel was ineffective in failing to move to suppress those statements.
 {¶ 63} Cochran's second and third assignments of error are overruled.
 {¶ 64} IV. "THE TRIAL COURT ERRED AS A MATTER OF LAW IN F AILING TO GRANT RELIEF ON HIS BLAKELY/APPRENDI ISSUE WHEN IT WAS PROPERLY PRESENTED IN A DIRECT ATTACK."
 {¶ 65} In his fourth assignment of error, Cochran claims that the trial court erred in refusing to vacate his sentence, which was based on an unconstitutional sentencing scheme in light of Blakely andFoster.
 {¶ 66} In Blakely, the United States Supreme Court held that "the maximum sentence a judge may impose is one based solely on the facts reflected in a jury verdict or admitted by the defendant." FollowingBlakely, the Supreme Court of Ohio held in Foster that certain portions of the Ohio sentencing statute, including R.C. 2929.14(B) and (C), are unconstitutional because they require judicial fact-finding."Foster requires that any pre-Foster sentence to which the *Page 13 
statutorily required findings of fact applied (i.e., nonminimum, maximum and consecutive sentences), which was pending on direct appeal at the time that Foster was decided, must be reversed and remanded for resentencing." State v. Deloach, Montgomery App. No. 21422,2006-Ohio-6303, ¶ 22.
 {¶ 67} We have consistently held that Foster does not apply retroactively to those cases which were neither on direct appeal nor still pending in the trial court when Foster was decided on February 27, 2006. E.g., State v. Dunn, Montgomery App. No. 21553, 2007-Ohio-1666. The United States Supreme Court also limited Blakely `s holding to cases already on direct appeal or pending before a trial court. United Statesv. Booker (2005), 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621; seeState v. McHale, Montgomery App. No. 21198, 2006-Ohio-4159, ¶ 4.
 {¶ 68} Because Cochran's plea and sentencing hearing was held on February 14, 2000, and the court entered a final judgment on February 24, 2000, his case was neither on direct appeal nor pending in the trial court when Blakely and Foster were decided. Consequently, those holdings are inapplicable to this case. The trial court did not err when it denied his motion to withdraw his plea or modify his sentence.
 {¶ 69} The fourth assignment of error is overruled.
 {¶ 70} V. "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING THAT APPELLANT FAILED TO DEMONSTRATE THAT A MANIFEST INJUSTICE EXISTS IN THIS CASE"
 {¶ 71} In his final assignment of error, Cochran claims that the trial court abused its discretion when it determined that Cochran had failed to demonstrate that a manifest injustice exists. "A manifest injustice comprehends a fundamental flaw in the path of justice so *Page 14 
extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her." State v. Hartzell (Aug. 20, 1999), Montgomery App. No. 17499. "Matters outside the record that allegedly corrupted the defendant's choice to enter a plea of guilty or no contest so as to render the plea less than knowing and voluntary are proper grounds for an R.C. 2953.21 petition for post-conviction relief. * * * [T]he availability of R.C. 2953.21 relief on those same grounds removes them from the form of extraordinary circumstances demonstrating a manifest injustice which is required for Crim.R. 32.1 relief." Id.;State v. Youngblood, Montgomery App. No. 21078, 2006-Ohio-4390,
 {¶ 72} As stated above, Cochran has not presented evidence that his counsel rendered ineffective assistance or that he was convicted of offenses far more severe than he actually committed. Moreover, although the trial court made findings under R.C. 2929.14(B) and (C), Cochran received the sentence that he and the state had presented to the trial court as a negotiated agreed sentence. Accordingly, Cochran did not suffer a manifest injustice in his sentencing. See State v. Grier, Greene App. No. 2006-CA-61, 2007-Ohio-2597. Finally, we see no reason why Cochran could not have raised his counsel's alleged ineffectiveness in a timely petition for post-conviction relief.
 {¶ 73} The fifth assignment of error is overruled.
 {¶ 74} The judgment of the trial court will be affirmed.
 GRADY, J. and GLASSER, J., concur. *Page 1