{¶ 14} I respectfully dissent. For the following reasons, I would reverse and remand the trial court's plea vacation.
 {¶ 15} First, I disagree with the majority's statement that claiming the state failed to separately address its claim, as required by App.R. 16(A), that Boswell's motion to withdraw his plea was barred by res judicata. App.R. 16(A)(7) provides that an appellant's brief must contain an argument "with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Under App.R. 12(A)(2), this court may then disregard anassignment of error, if the party raising it "fails to argue the assignment separately in the brief, as required under App.R. 16(A)."
 {¶ 16} In its appellate brief, the state presented a single assignmentof error, as the majority sets forth. Under the assignment of error, i.e., that the trial court erred when it granted Boswell's motion to withdraw his plea, the state presents several arguments, only one of which is the res judicata argument. If Boswell's Crim.R. 32.1 motion is barred by res judicata, then the trial court erred when it granted it. Thus, the res judicata argument fully falls within Boswell's singleassignment of error.
 {¶ 17} Furthermore, within its res judicata argument, the state sets forth a thorough argument and analysis, supported by extensive case law, including cases *Page 9 
from this district, as well as eight other appellate districts. If this court concluded that res judicata barred Boswell's motion to vacate his plea, then we would have to conclude that the trial court erred in granting the motion for that reason. If we concluded that it did not bar it, then we would get to the issue that is the crux of this appeal; i.e., whether a trial court's notice to a defendant at his plea hearing that he may receive postrelease control, when it was actuallymandatory postrelease control, meets the extraordinarily high standard of "manifest injustice" within a post-sentence Crim.R. 32.1 motion. Thus, it is this author's view that the issue of res judicata must first be addressed.
 {¶ 18} Most appellate courts, including this court, have applied res judicata to Crim.R. 32.1 motions at one time; but not consistently, and often times, the issue of res judicata is completely ignored. SeeState v. Reynolds, 3d Dist. No. 12-01-11, 2002-Ohio-2823 (for a list of cases from each district representing the procedural "quagmire" and "turmoil" this issue presents). Nevertheless, it is my view that we are bound by this court's decision in State v. Gaston, 8th Dist. No. 82628,2003-Ohio-5825, which held that res judicata barred Gaston's post-judgment Crim.R. 32.1 motion.
 {¶ 19} Gaston had entered a plea of guilty in April 2001. He directly appealed his sentence and conviction, but did not challenge his plea. We affirmed in February 2002. See State v. Gaston, 8th Dist. No. 79626, 2002-Ohio-506. Gaston filed a Crim.R. 32.1 motion to withdraw his plea seven months later, in September 2002. *Page 10 
 {¶ 20} This court disagreed with the state that Gaston's motion was barred on jurisdictional grounds, since Gaston did not question his plea in his direct appeal. Id. at _4-5. Nevertheless, this court held that his motion was barred by res judicata. Id. at _8.
 {¶ 21} In Gaston, we discussed the Supreme Court's decision inState v. Bush, 96 Ohio St.3d 235, 2002-Ohio-3993 (where the Supreme Court held that R.C. 2953.21 and R.C. 2953.23 (postconviction relief statutes) do not govern a Crim.R. 32.1 post-sentence motion to withdraw a guilty plea). Id. We concluded that the holding in Bush only distinguished Crim.R. 32.1 motions from postconviction relief petitions, but did not address the issue of res judicata. Id.
 {¶ 22} We further reasoned in Gaston that just because the Supreme Court made it clear that a Crim.R. 32.1 motion is not a collateral attack, and is filed in the original action, did not mean that res judicata did not apply. Id. We relied on State v. Szefcyk (1996),77 Ohio St.3d 93, for the proposition that: "Res judicata applies to `any proceeding' initiated after a final judgment of conviction and direct appeal." Id. Therefore, in Gaston, this court concluded that a Crim.R. 32.1 motion would be included within "any proceeding," and as such, "res judicata bars any part of the motion that could have been raised on direct appeal." Id. See, also, State v. Daily, 8th Dist. No. 84123,2004-Ohio-5391; Reynolds, supra; State v. Brown, *Page 11 167 Ohio App.3d 239, 2006-Ohio-3266 (Tenth District). But, see, State v.Spencer, 2d Dist. No. 2006 CA42, 2007-Ohio-2140.
 {¶ 23} The same analysis applies to the case sub judice. Boswell contends that his plea was not voluntary because the trial court misinformed him at his plea hearing that he may receive, rather than he would receive, postrelease control. However, Boswell could have raised that issue on direct appeal. Thus, his motion is barred by res judicata.
 {¶ 24} Boswell further asserts that res judicata should not apply, since his trial counsel was ineffective when he did not recognize the trial court's error regarding postrelease control, and did not object. However, Boswell even states that, "the record of the plea hearing demonstrates" this alleged error. Since the alleged ineffective assistance of counsel appeared on the face of the record, he could have directly appealed it.
 {¶ 25} Moreover, if an alleged ineffective assistance of counsel claimdoes not appear on the face of the record, a defendant can file a petition for postconviction relief within the time frame under R.C.2953.21. "`Matters outside the record that allegedly corrupted the defendant's choice to enter a plea of guilty or no contest so as to render the plea less than knowing and voluntary are proper grounds for an R.C. 2953.21 petition for post-conviction relief. * * * (T)he availability of R.C. 2953.21 relief on those same grounds removes them from the form of extraordinary circumstances demonstrating a manifest injustice which is required for Crim.R. 32.1 *Page 12 
relief.'" (Ellipses in original.) State v. Cochran, 2d Dist. No. 2006CA87, 2007-Ohio-4545, at _71, quoting State v. Hartzell (Aug. 20, 1999), 2d Dist. No. 17499, 1999 Ohio App. LEXIS 3812.
 {¶ 26} Therefore, it is my view that res judicata bars Boswell's Crim.R. 32.1 motion and, as such, the trial court abused its discretion when it granted it.
 {¶ 27} Even if this court held that res judicata did not bar Boswell's motion, this author would still conclude that the trial court abused its discretion when it granted Boswell's Crim.R. 32.1 motion, nearly six years after he pled guilty, as it did not rise to the extraordinarily high standard of "manifest injustice."
 {¶ 28} Crim.R. 32.1 provides as follows: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." This rule imposes a strict standard for deciding a post-sentence motion to withdraw a plea. State v. Griffin (2001), 141 Ohio App.3d 551,553. A defendant may only be allowed to withdraw a plea after sentencing in "extraordinary cases." State v. Smith (1977), 49 Ohio St.2d 261, 264. The defendant bears the burden of showing a manifest injustice warranting the withdrawal of a plea. Id. at paragraph one of the syllabus. "The logic behind this precept is to discourage a defendant from pleading guilty to test the weight of potential reprisal, and later withdrawing the plea if the sentence was *Page 13 
unexpectedly severe." State v. Wynn (1998), 131 Ohio App.3d 725, 728, citing State v. Caraballo (1985), 17 Ohio St.3d 66.
 {¶ 29} In State v. Wolford (Sept. 17, 1999), 2d Dist. No. 99CA10, 1999 Ohio App. LEXIS 4282, the Second District explained:
 {¶ 30} "The term injustice is defined as `the withholding or denial of justice. In law, the term is almost invariably applied to the act, fault, or omission of a court, as distinguished from that of an individual.' Black's Law Dictionary, 5th Ed. A `manifest injustice' comprehends a fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her.
 {¶ 31} "* * *
 {¶ 32} "Failure to comply with the requirements of Crim.R. 11(C) when taking a plea is a defect that may be the subject of a merit appeal which supports reversal of a defendant's conviction when prejudice results. State v. Ballard (1981), 66 Ohio St. 2d 473. Even when a timely appeal is not taken, a delayed appeal is available pursuant to App.R. 5(A), upon a proper showing. Therefore, a court's failure to comply with the requirements of Crim.R 11(C) is not an extraordinary circumstance demonstrating a form of manifest injustice required for Crim.R. 32.1 relief." (Emphasis in original and parallel citations omitted.) Id. at 4-5. *Page 14 
 {¶ 33} It is this writer's view that Boswell has not demonstrated an "extraordinary circumstance" which would rise to the high standard of "manifest injustice," such that his plea should have been vacated post-sentence, post-judgment, and nearly six years after he entered into his plea. His lack of proper notification appeared on the face of the record, and thus, he should have directly appealed the trial court's postrelease control notification. He also could have filed a delayed appeal within a reasonable amount of time after discovering the error, rather than nearly six years later.
 {¶ 34} Thus, Boswell could have sought redress from the resulting prejudice through three different avenues that were reasonably available to him: (1) a timely direct appeal; (2) a more timely delayed appeal; or (3) a timely petition for post-conviction relief. He failed to take advantage of any of them. Boswell has not presented an extraordinary circumstance demonstrating a manifest injustice, which is required by a post-sentence Crim.R. 32.1 motion. Thus, it is this writer's view that the trial court abused its discretion when it granted Boswell's motion.
 {¶ 35} In addition, I disagree with the majority that it was "irrelevant" that Boswell did not actually receive postrelease control as part of his sentence. Regardless of whether he will be sentencedin the future to postrelease control pursuant to R.C. 2929.191, that is not the issue before us in the instant case. At this point, he is not subject to postrelease control, and as such, was not prejudiced by *Page 15 
the trial court misinforming him of the mandatory nature of postrelease control. See State v. Ballard (1981), 66 Ohio St. 2d 473.
 {¶ 36} The majority cites six cases for the proposition that, "[t]his court has repeatedly held that, where the trial court failed to personally address a defendant and inform him of the maximum length of postrelease control before accepting his guilty plea, the court fails to substantially comply with Crim.R. 11(C)(2)(a) and R.C. 2943.032." I agree that all six cases stand for that proposition.[3]
 {¶ 37} In none of the cases cited by the majority, however, did the appellants file a Crim.R. 32.1 motion to withdraw their plea, let alone one that was filed nearly five years after they pled guilty. In each of the six cases, it was the appellant's direct *Page 16 
appeal, where he claimed that the trial court erred when it accepted his guilty plea-because it was not knowingly, voluntarily, and intelligently made. In all six cases, this court vacated the appellant's plea and remanded the case. Thus, it is my view that these cases, which do not have the same procedural issue as the one presented here, do not apply to the case at bar.
 {¶ 38} Even if the six cases could be relied on in this case, for the following reasons, I still would not agree that Boswell's plea should have been vacated.
 {¶ 39} "R.C. 2943.032(E) requires that, prior to accepting a guilty plea for which a term of imprisonment will be imposed, the trial court must inform a defendant regarding post release control sanctions in a reasonably thorough manner." Rankin, supra, at _29, citing Woods v.Telb, 89 Ohio St.3d 504, 2000-Ohio-171.
 {¶ 40} In Flemining, supra, at _3-4, this court stated:
 {¶ 41} "`In resolving whether a criminal defendant knowingly, intelligently, and voluntarily entered a plea, our query is whether the trial court adequately guarded constitutional or non-constitutional rights promised by Crim.R. 11(C). The applicable standard of review depends upon which right or rights the appellant raises on appeal. We require strict compliance if the appellant raises a violation of a constitutional right delineated in Crim.R. 11(C)(2)(c); alternatively, if the appellant raises a violation of a non-constitutional right found in Crim.R. 11(C)(2)(b), we look *Page 17 
for substantial compliance.' State v. Moviel, [8 th Dist. No.] 86244,2006 Ohio 697, _10, citations omitted.
 {¶ 42} "As outlined by the Ohio Supreme Court:
 {¶ 43} "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. Furthermore, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect. The test is whether the plea would have been made otherwise. State v.Nero (1990), 56 Ohio St.3d 106, 108."
 {¶ 44} Boswell argues here that he has raised a constitutional error, and thus strict compliance with Crim.R. 11 is required. However, the rights implicated (informing a defendant of the maximum penalty he could receive) are not of constitutional dimension and fall, instead, within the parameters of Crim.R. 11(C)(2)(b). Thus, only substantial compliance is necessary. Fleming at _5.
 {¶ 45} One of the cases cited by the majority, Crosswhite, supra, bears further discussion regarding what is required by "substantial compliance." In Crosswhite, the trial court informed the appellant at his plea hearing that upon his release from prison, he "might be released on what is called postrelease control[.]" But the appellant's postrelease control was mandatory, "by operation of law." Id. at _9. We held that under the totality of the circumstances, the trial court did not substantially *Page 18 
comply with the requirements of Crim.R. 11 when it accepted the appellant's guilty plea. Id. at _12.
 {¶ 46} Two months later, in State v. Holloway, 8th Dist. Nos. 86426 and 86247, 2006-Ohio-2591 ("Holloway I"), we stated, "[t]his court recently addressed an identical situation in [Crosswhite]." Id. at _17. Relying on Crosswhite, we concluded that, by informing the appellant that he may get five years of postrelease control, rather than hewould get it — because it was mandatory — that the appellant's plea was not knowingly, intelligently, and voluntarily entered. Id. at _18. We vacated the appellant's plea. Id.
 {¶ 47} Notably, however, on December 6, 2006, Holloway I was reversed by the Supreme Court of Ohio, in a one sentence opinion. See State v.Holloway, 111 Ohio St.3d 496, 2006-Ohio-6114. It stated, "The judgment of the court of appeals is reversed on the authority of Watkins v.Collins (2006), 111 Ohio St.3d 425[.]" On February 28, 2007, the Supreme Court, upon a motion for reconsideration, remanded Holloway to this court for consideration of the remaining assignments of error (since we vacated the appellant's plea, we did not address the remaining assignments). See State v. Holloway, 112 Ohio St.3d 1495.
 {¶ 48} Upon remand, this court explained that, in Watkins, the Supreme Court held, "the failure of the trial court to inform the defendant that postrelease control was mandatory did not result in an invalid plea or sentence." State v. Holloway, 8th *Page 19 
Dist. Nos. 86426 and 86427, 2007-Ohio-2221, at _11 ("Holloway II"). We then concluded that the appellant's assignment of error, claiming that he was denied due process of law because he was not informed that he would be subjected to mandatory postrelease control at his plea hearing, was without merit. Id.
 {¶ 49} Watkins was an action for writ of habeas corpus to compel the release of twelve petitioners who were in prison for violating the terms of their postrelease control. Id. at _2. Each petitioner claimed that he was informed at his sentencing hearing that he may be subjected to postrelease control, but was not properly informed of the mandatory nature of the postrelease control.
 {¶ 50} In Watkins, the Supreme Court stated, "[h]ere, while not specifying the post[-]release control as mandatory, the trial courts did at least notify the petitioners that they could be subject to post[-]release control at their sentencing hearings." Id. at _46. The Supreme Court further reasoned, "[w]hile these entries erroneously refer to discretionary instead of mandatory post[-]release control, they contain significantly more information than any of the sentencing entries held insufficient in [Hernandez v. Kelly, 108 Ohio St.3d 395,2006-Ohio-126] (no reference to postrelease control) and Gensley v.Eberlin, 110 Ohio St.3d 1474, 2006-Ohio-126] (vague reference about petitioner's understanding the possibilities penalties)." Id. at _51. Thus, the Supreme Court concluded, "the sentencing entries are sufficient to afford notice to a reasonable person that the courts were authorizing post[-]release *Page 20 
control as part of each petitioner's sentence. A reasonable person in the position of any of the petitioners would have had sufficient notice that post[-]release control could be imposed following the expiration of the person's sentence. * * *" Id.
 {¶ 51} Holloway I only addressed appellant's argument that hisplea was invalid because he was not informed of the mandatory nature of his postrelease control at his plea hearing. Despite the fact thatWatkins was a habeas corpus action dealing with postrelease controlnotification at sentencing, the Supreme Court still reversed our decision in Holloway I based on the authority of Watkins.
 {¶ 52} Recently, the First District Court of Appeals was faced with the same issue as in Holloway I and Crosswhite; i.e., the appellant was misinformed at his plea hearing that he may receive postrelease control, when it was actually mandatory. See State v. Fuller, 1st Dist. No. C-040318, 2007-Ohio-1020. Because of this, the appellant inFuller claimed that his plea was not voluntary, knowing, and intelligent, and therefore, the trial court violated Crim.R. 11(C)(2)(a)-as Boswell claims in the case sub judice. Id. at _1.
 {¶ 53} The First District discussed Holloway I and its reversal by the Supreme Court on the authority of Watkins. Id. at _7-9. It concluded that although the Supreme Court did not elaborate on its decision to reverse, the decision could "only be read to renounce the rule, applied by the Eighth District in its decision, that a trial *Page 21 
court violates its duty under Crim.R. 11(C)(2)(a) when it misinforms a defendant that a mandatory period of postrelease control is discretionary." Id. at _9.
 {¶ 54} In light of the Supreme Court's reversal of Holloway I, this writer agrees the high Court has made it clear that if a trial court misinforms a defendant at a plea hearing that he or she may receive postrelease control, when it was actually mandatory, the trial court has substantially complied with Crim.R. 11. As such, appellate courts err if they vacate a plea under these circumstances. The same reasoning would equally apply — and even more so — to a trial court's plea vacation in the context of the "manifest injustice" standard under a Crim.R. 32.1 post-sentence motion to withdraw the plea.
 {¶ 55} Thus, it is my view that the trial court abused its discretion when it vacated Boswell's motion to withdraw his plea, filed nearly six years after he entered into it. I would reverse and remand, and instruct the trial court to reinstate Boswell's guilty plea.
[3] As the state correctly points out, this court has also held that a trial court substantially complies with Crim.R. 11 when it misinforms defendants at their plea hearing that they may, rather than they will, receive postrelease control. See State v. Fleming, 8th Dist. No. 87773,2006-Ohio-6773; State v. Shorter, 8th Dist. No. 86826, 2006-Ohio-2882; and State v. Rankin, 8th Dist. No. 86706, 2006-Ohio-2571 (informed defendant that postrelease control was mandatory, but improperly told him he could receive "anywhere from three to five years").
It is significant to note that on January 24, 2007, the Supreme Court granted discretionary review of a case from this district, where we affirmed the trial court's denial of a defendant's Crim.R. 32.1 motion and held that the trial court substantially complied with Crim.R. 11, despite the fact that the trial court made no mention of postreleasecontrol at the plea hearing (Sweeney, J., dissented, concluding that he would have vacated the plea). See State v. Sarkozy, 8th Dist. No. 96952,2006-Ohio-3977, accepted for review by State v. Sarkozy,112 Ohio St.3d 1441, 2007-Ohio-3977. The proposition of law accepted by the Supreme Court was: "The failure during a plea colloquy to correctly advise a defendant of the length of postrelease control that will be part of the sentence of imprisonment causes the plea to be invalid. (Courts must exercise discretion in determining whether substantial compliance exists in relation to the alleged failure to advise of postrelease control.)" Oral argument in this case was held on October 16, 2007. *Page 1