WATKINS ET AL. *v.* COLLINS, DIR.

[Cite as *Watkins v. Collins,* 111 Ohio St.3d 425, 2006-Ohio-5082.]

(No. 2006–1634—Submitted September 18, 2006—Decided October 4, 2006.)

**Per Curiam.**

{¶ 1} This is an action for a writ of habeas corpus to compel the release of 12 petitioners who are currently in prison for violating the terms of their postrelease control.

Sentencing Entries for the Petitioners

Thomas B. Watkins

{¶ 2} On February 27, 1998, the Allen County Court of Common Pleas convicted petitioner Thomas B. Watkins of aggravated robbery (a felony of the first degree) with a firearm specification and sentenced him to an aggregate prison term of seven years. The trial court's sentencing entry included the following postrelease-control language:

{¶ 3} "The Court has further notified the defendant that post release control is optional in this case up to a maximum of FIVE (5) years, as well as, the consequences for violating conditions of post release control imposed by the Parole Board under R.C. 2967.28. The defendant is ordered to serve as part of this sentence any term of postrelease control imposed by the Parole Board, and any prison term for violation of that post release control."

John Warren Ivy

{¶ 4} In June 1998, after petitioner John Warren Ivy was convicted of two counts of aggravated robbery (a felony of the first degree) with a firearm specification for one count, the Montgomery County Court of Common Pleas sentenced Ivy to an aggregate prison term of six years. The trial court included the following language regarding postrelease control in its sentencing entry:

{¶ 5} "Following the defendant's release from prison, the defendant will/may serve a period of post-release control under the supervision of the parole board;

{¶ 6} "Should the defendant violate any post-release control sanction or any law, the adult parole board may impose a more restrictive sanction. The parole

board may increase the length of the post-release control. The parole board could impose an additional nine (9) months prison term for each violation for a total of up to fifty percent (50%) of the original sentence imposed by the court. If the violation of the sanction is a felony, in addition to being prosecuted and sentenced for the new felony, the defendant may receive from the court a prison term for the violation of the post-release control itself."

### Joseph Lavun Ramey

{¶ 7} On February 28, 1997, after petitioner Joseph Lavun Ramey was convicted of two counts of aggravated robbery (a felony of the first degree) with a firearm specification on one count, the Montgomery County Court of Common Pleas sentenced Ramey to an aggregate prison term of eight years. The trial court included the identical postrelease-control language in Ramey's sentencing entry that it had included in Ivy's sentencing entry.

### Johnny Streeter

{¶ 8} On March 9, 2005, after petitioner Johnny Streeter was convicted of intimidation (a felony of the third degree), the Lorain County Court of Common Pleas sentenced him to one year in prison. The trial court included the following postrelease-control language in its sentencing entry:

{¶ 9} "The court has further notified the defendant that post release control is (mandatory/optional) in this case up to a maximum of (3/5) years, as well as the consequences for violating conditions of post release control imposed by the Parole Board under Ohio Rev.Code § 2967.28. The defendant is ordered to serve as part of this sentence any term of post release control imposed by the Parole Board, and any prison term for violation of that post release control."

### William A. Maddox

{¶ 10} On February 28, 2000, after petitioner William A. Maddox was convicted of sexual battery (a felony of the third degree), the Highland County Court of Common Pleas sentenced him to three years in prison. The trial court included the following postrelease-control language in its sentencing entry:

{¶ 11} "The Court, in imposing this sentence, finds pursuant to Sections 2929.11 to 2929.19 ORC, * * * that defendant is subject to post-release control which is (mandatory/optional) for up to (three/five) years."

### Darnelle A. Moore

{¶ 12} On April 2, 1999, after petitioner Darnelle A. Moore was convicted of robbery (a felony of the third degree), the Lake County Court of Common Pleas sentenced him to three years in prison. The trial court included the following postrelease-control language in its sentencing entry:

{¶ 13} "The Court has further notified the defendant that post release control is optional in this case up to a maximum of 3 years, as well as the consequences for violating conditions of post release control imposed by the Parole Board under Revised Code section 2967.28. The defendant is ordered to serve as part of this sentence any term of post release control imposed by the Parole Board, and any prison term for violation of that post release control."

## Jerry L. McGlone

{¶ 14} On March 13, 2003, the Scioto County Court of Common Pleas convicted petitioner Jerry L. McGlone of burglary (a felony of the third degree), breaking and entering (a felony of the fifth degree), receiving stolen property (a felony of the fourth degree), and forgery (a felony of the fifth degree), and sentenced him to an aggregate prison term of three and one-half years. The trial court included the identical postrelease-control language used by the trial court in Moore's sentencing entry.

## Jamon K. Gaskins

{¶ 15} On August 13, 2002, after petitioner Jamon K. Gaskins was convicted of two counts of trafficking in crack cocaine (a felony of the second degree) with a specification that he had committed the offense within 100 feet of a juvenile on one count, the Clark County Court of Common Pleas sentenced Gaskins to an aggregate prison term of two years. The trial court included language regarding postrelease control that is identical to the language used by the trial courts in the sentencing entries for Moore and McGlone.

## Arlene Bowling

{¶ 16} On November 17, 1998, after petitioner Arlene Bowling was convicted of burglary (a felony of the second degree), the Greene County Court of Common Pleas sentenced her to three years of community control. In the sentencing entry, the trial court included the following language regarding community control and postrelease control:

{¶ 17} "Violation of this sentence may lead to a longer or more restrictive sanction for defendant, up to and including a prison term of up to 3 years. Defendant is notified that if a prison term is imposed for violation of community control, the Parole Board may extend prison time up to ½ of the stated prison term in 15, 30, 60, or 90 day increments for certain violations committed while in prison. After prison release, if post release control is imposed, for violation of post release control conditions, the Adult Parole Authority or Parole Board could impose a more restrictive or longer control sanction, or return defendant to prison for up to nine months for each violation, up to a maximum of ½ of the stated prison term. If the violation is a new felony, defendant may receive a

prison term of the greater of one year of the time remaining on post release control, in addition to any other prison term imposed for the new offense."

{¶ 18} On June 14, 2000, the trial court found that Bowling had violated the community control and sentenced her to three years in prison. The trial court did not include any term of postrelease control in this sentencing entry.

### Michael E. Abbott

{¶ 19} On March 30, 2000, the Noble County Court of Common Pleas convicted petitioner Michael E. Abbott of gross sexual imposition (a felony of the third degree) and sentenced him to three years in prison. The trial court included postrelease-control language comparable to that used by the trial court in Bowling's initial sentencing entry.

### Paul D. McGowan III

{¶ 20} On June 11, 2002, the Marion County Court of Common Pleas convicted petitioner Paul D. McGowan III of burglary (a felony of the third degree) and sentenced him to two years in prison. The trial court included the following postrelease-control language in its sentencing entry:

{¶ 21} "The defendant may be subject to a period of three (3) years of post-release control by the parole board.

{¶ 22} "During any period of post-release control, the Defendant will be under the supervision of the Adult Parole Authority which will require the Defendant to comply with one or more post-release control sanctions. In the event the Defendant violates a post-release control sanction, the parole board may then impose a more restrictive post-release control sanction, and may increase the duration, or period, of the post-release control subject to a statutory maximum. The more restrictive sanction that the parole board may impose may consist of a prison term, provided that the prison term cannot exceed nine months and the maximum cumulative prison term imposed for all violations during the period of post-release control cannot exceed one-half of the stated prison term originally imposed. If the violation of the post-release control sanction is a felony, the Defendant may be prosecuted for the new felony and, in addition to any sentence the court imposes for the new felony, the court may also impose a prison term for the violation, subject to the statutory maximum."

### Jamie Kearns

{¶ 23} On August 23, 2000, after petitioner Jamie Kearns was convicted of corruption of a minor (a felony of the fourth degree) and burglary (a felony of the fourth degree), the Butler County Court of Common Pleas sentenced him to an aggregate prison term of two years and ten months. The trial court included the following postrelease-control language in its sentencing entry:

{¶ 24} "The Court has further notified the defendant that post release control is optional in this case up to a maximum of 3 years, as well as the consequences for violating conditions of post release control imposed by the Parole Board under Revised Code Section 2967.28. The defendant is ordered to serve as part of this sentence any term of postrelease control imposed by the Parole Board, and any prison term for violation of that post release control."

## Actions of the Adult Parole Authority

{¶ 25} According to the parties, all of the petitioners were released from their original prison sentences and placed on postrelease control, were found to have violated the terms of that control by the Adult Parole Authority and respondent, Ohio Department of Rehabilitation and Correction Director Terry Collins, and were resentenced to prison. The petitioners are currently incarcerated. The scheduled release dates for the petitioners under the Parole Authority's decisions are as follows: Watkins (Nov. 26, 2006), Ivy (Mar. 17, 2007), Ramey (Nov. 29, 2006), Streeter (Dec. 8, 2006), Maddox (Mar. 23, 2007), Moore (Apr. 7, 2007), McGlone (Feb. 22, 2007), Gaskins (Jan. 16, 2007), Bowling (Jan. 23, 2007), Abbott (Feb. 3, 2007), McGowan (Dec. 27, 2006), and Kearns (Nov. 22, 2006). www.drc.state.oh.us/offendersearch.

## Federal District Court Case

{¶ 26} The petitioners are members of a plaintiff class in a pending federal class action, *Hernandez v. Wilkinson* (N.D.Ohio filed Jan. 24, 2006), No. 1:06–CV–158, 2006 WL 500042. In that case, the federal district court has certified a class described as "[a]ll persons who have been subjected to postrelease control in Ohio between January 24, 2004 and the present." The class-action plaintiffs seek to be restored to the status they would have held if postrelease control had not been imposed. The federal district court issued a remedial order in which the parties agreed that the class members who did not have postrelease control incorporated into their sentencing entries were entitled to relief. The parties have not yet agreed on the proper disposition of challenges to postrelease control by those plaintiffs who were subject to mandatory postrelease control but whose sentencing entries incorrectly indicated that postrelease control was conditional.

## Habeas Corpus

{¶ 27} On August 31, 2006, petitioners filed this action for a writ of habeas corpus to compel Collins to immediately release them from prison. Petitioners claim that they are entitled to the writ because they failed to receive adequate notice of postrelease control and their sentencing entries failed to incorporate adequate notice of postrelease control into their sentences. The parties have stipulated to the facts set forth in the petition. Petitioners did not attach a verification to their petition, swearing to the truth of the allegations. Petitioners

did attach copies of their trial court sentencing entries but did not attach copies of the Parole Authority decisions imposing the postrelease-control sanctions that are the cause of their current incarceration.

{¶ 28} On September 7, 2006, we allowed the writ and ordered Collins to file a return within three days of service of the petition. *Watkins v. Collins,* 110 Ohio St.3d 1477, 2006-Ohio-4578, 853 N.E.2d 672. On September 14, Collins submitted a return. On September 18, petitioners filed their response to the return.

{¶ 29} This cause is now before us for our consideration of the petition, the return, and the response.

### Commitment–Paper and Verification Requirements

{¶ 30} R.C. 2725.04(D) requires that copies of the commitment papers be attached to the petition for a writ of habeas corpus:

{¶ 31} "A copy of the commitment or cause of detention of such person shall be exhibited, if it can be procured without impairing the efficiency of the remedy; or, if the imprisonment or detention is without legal authority, such fact must appear."

{¶ 32} "These commitment papers are necessary for a complete understanding of the petition. Without them, the petition is fatally defective. When a petition is presented to a court that does not comply with R.C. 2725.04(D), there is no showing of how the commitment was procured and there is nothing before the court on which to make a determined judgment except, of course, the bare allegations of petitioner's application." *Bloss v. Rogers* (1992), 65 Ohio St.3d 145, 146, 602 N.E.2d 602.

{¶ 33} R.C. 2725.04 also requires that the petition be verified:

{¶ 34} "Application for the writ of habeas corpus shall be by petition, signed and verified either by the party for whose relief it is intended, or by some person for him * * *."

{¶ 35} For purposes of R.C. 2725.04, " '[v]erification' means a 'formal declaration made in the presence of an authorized officer, such as a notary public, by which one swears to the truth of the statements in the document.' " *Chari v. Vore* (2001), 91 Ohio St.3d 323, 327, 744 N.E.2d 763, quoting Garner, Black's Law Dictionary (7th Ed.1999) 1556.

{¶ 36} The habeas corpus petition here did not contain any copies of the Adult Parole Authority decisions that resulted in the petitioners' current confinement. Nor does the petition include any sworn statement verifying the allegations of the petition.

{¶ 37} In general, a habeas corpus petition that fails to comply with the commitment-paper and verification requirements of R.C. 2725.04 is fatally defec-

tive and is subject to dismissal. *State ex rel. McCuller v. Callahan,* 98 Ohio St.3d 307, 2003-Ohio-858, 784 N.E.2d 108, ¶ 4; *Hawkins v. S. Ohio Correctional Facility,* 102 Ohio St.3d 299, 2004-Ohio-2893, 809 N.E.2d 1145, ¶ 4.

{¶ 38} Nevertheless, the petition here includes a stipulation of the parties agreeing to all the pertinent facts, including that "[e]ach and every Petitioner is currently detained in an Ohio prison, serving a sanction imposed by Respondent for violating the terms of his/her postrelease control." Therefore, because the stipulated facts as well as the sentencing entries included in the petition are sufficient for a complete understanding of the petitioners' habeas corpus claim, we refrain from invoking our general rules requiring dismissal and proceed to address the merits of the claim.

### Habeas Corpus Claim

{¶ 39} "A writ of habeas corpus is warranted in certain extraordinary circumstances 'where there is an unlawful restraint of a person's liberty and there is no adequate remedy in the ordinary course of law.' " *Johnson v. Timmerman–Cooper* (2001), 93 Ohio St.3d 614, 616, 757 N.E.2d 1153, quoting *Pegan v. Crawmer* (1996), 76 Ohio St.3d 97, 99, 666 N.E.2d 1091. " 'Like other extraordinary-writ actions, habeas corpus is not available when there is an adequate remedy in the ordinary course of law.' " *Smith v. Bradshaw,* 109 Ohio St.3d 50, 2006-Ohio-1829, 845 N.E.2d 516, ¶ 10, quoting *In re Complaint for Writ of Habeas Corpus for Goeller,* 103 Ohio St.3d 427, 2004-Ohio-5579, 816 N.E.2d 594, ¶ 6.

{¶ 40} Generally, "[s]entencing errors by a court that had proper jurisdiction cannot be remedied by extraordinary writ" because the petitioner "has or had adequate remedies in the ordinary course of law, e.g., appeal and postconviction relief, for review of any alleged sentencing error." *State ex rel. Jaffal v. Calabrese,* 105 Ohio St.3d 440, 2005-Ohio-2591, 828 N.E.2d 107, ¶ 5. In accordance with this general rule, "[w]e have consistently held that sentencing errors are not jurisdictional and are not cognizable in habeas corpus." *Majoros v. Collins* (1992), 64 Ohio St.3d 442, 443, 596 N.E.2d 1038, and cases cited therein; see, also, *Smith v. Walker* (1998), 83 Ohio St.3d 431, 432, 700 N.E.2d 592.

{¶ 41} With these guides in mind, we next consider the petitioners' habeas claim, which challenges the authority of the Adult Parole Authority to place them on postrelease control and sanction them for violations of that control in the absence of appropriate language in their sentencing entries.

### Postrelease–Control Language In Sentencing Entries

{¶ 42} R.C. 2967.28 governs postrelease control. Under R.C. 2967.28, "[e]ach sentence to a prison term for a felony of the first degree, for a felony of the second degree, for a felony sex offense, or for a felony of the third degree that is

not a felony sex offense and in the commission of which the offender caused or threatened to cause physical harm to a person shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment." The terms for this mandatory postrelease control are either three or five years. R.C. 2967.28(B)(1)-(3). According to the parties, each of the petitioners was subject to a mandatory term of postrelease control based upon their convictions. Nevertheless, the language of their trial court sentencing entries mistakenly included some discretionary language concerning their terms of postrelease control.

{¶ 43} The petitioners claim that by misrepresenting the mandatory nature of their postrelease control, the trial courts never properly imposed such control and that they therefore could not be imprisoned by the Parole Authority and Collins for violating that control. Petitioners rely on the court's opinions in *Woods v. Telb* (2000), 89 Ohio St.3d 504, 733 N.E.2d 1103; *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864; *Hernandez v. Kelly,* 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, and *Gensley v. Eberlin,* 110 Ohio St.3d 1474, 2006-Ohio-4474, 853 N.E.2d 313, to support their claim.

{¶ 44} In *Woods,* we held, "Pursuant to R.C. 2967.28(B) and (C), a trial court must inform the defendant at sentencing or at the time of a plea hearing that post-release control is part of the defendant's sentence." 89 Ohio St.3d 504, 733 N.E.2d 1103, at paragraph two of the syllabus. "Because the record clearly indicates that the petitioner was advised of discretionary post-release control both in his signed plea form and in his sentencing entry, we find no violation of the separation of powers doctrine in this case." Id. at 513, 733 N.E.2d 1103.

{¶ 45} In *Jordan,* we held, in consolidated appeals from criminal convictions, "When sentencing a felony offender to a term of imprisonment, a trial court is required to notify the offender at the sentencing hearing about postrelease control and is further required to incorporate that notice into its journal entry imposing sentence." 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, at paragraph one of the syllabus. "Accordingly, if a trial court has decided to impose a prison term upon a felony offender, it is duty-bound to notify that offender at the sentencing hearing about postrelease control and to incorporate postrelease control into its sentencing entry, which thereby empowers the executive branch of government to exercise its discretion." Id. at ¶ 22. The remedy for improper notification about postrelease control at the sentencing hearing is resentencing—not release from prison. Id. at paragraph two of the syllabus.

{¶ 46} Neither *Woods* nor *Jordan* entitles the petitioners to release from prison. Those cases focused on whether the offenders were properly notified about postrelease control at their sentencing hearings. There was no dispute

regarding the language incorporated into the sentencing entries. Here, while not specifying the postrelease control as mandatory, the trial courts did at least notify the petitioners at their sentencing hearings that they could be subject to postrelease control.

{¶ 47} Respondent also relies on the *Woods* and *Jordan* sentencing entries, but that reliance is not particularly helpful in assessing the petitioners' claims. The sentencing entries in *Woods* and in one of the cases consolidated for review in *Jordan* involved discretionary instead of mandatory postrelease control, so conditional language was warranted.

{¶ 48} Petitioners' citation of *Hernandez*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, and *Gensley*, 110 Ohio St.3d 1474, 2006-Ohio-4474, 853 N.E.2d 313, is more relevant. In these cases as well as in the court's recent decision in *Adkins v. Wilson*, 110 Ohio St.3d 1454, 2006-Ohio-4275, 852 N.E.2d 749, we granted writs of habeas corpus and ordered the immediate release of petitioners who were incarcerated following the Parole Authority's imposition of a postrelease-control sanction of imprisonment because the petitioners' trial court sentencing entries did not impose a term of postrelease control. In *Hernandez*, the sentencing entry contained no reference to postrelease control. In *Adkins*, the sentencing entry did not contain any reference to postrelease control, and we, in effect, held that the trial court lacked jurisdiction to issue a nunc pro tunc entry adding postrelease control to the sentence after Adkins's original sentence had expired. In addition, following *Hernandez*, Adkins's trial court issued two entries specifically ordering the Parole Authority to terminate his postrelease-control sanction. In *Gensley*, the sole reference to postrelease control in the sentencing entry was a vague statement that Gensley understood the possibility of postrelease control.

{¶ 49} In *Hernandez*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, at ¶ 20, we emphasized the statement from *Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 19, that "unless a trial court includes postrelease control in its sentence, the Adult Parole Authority is without authority to impose it."

{¶ 50} By contrast, the sentencing entries for the petitioners here specified that postrelease control was, at a minimum, discretionary and was part of their sentences. For example, the trial courts stated that petitioners Watkins, Streeter, Moore, McGlone, Gaskins, and Kearns were "ordered to serve as part of this sentence any term of post release control imposed by the Parole Board, and any prison term for violation of that post release control." The sentencing entries for petitioners Ivy and Ramey stated that "[f]ollowing the defendant's release from prison, the defendant will/may serve a period of post-release control under the supervision of the parole board." For petitioner Maddox, the sentencing entry likewise provided that "defendant is subject to post-release control which is (mandatory/optional) for up to (three/five) years." The sentencing entry for

petitioner McGowan stated that he "may be subject to a period of three (3) years of post-release control by the parole board." Finally, for petitioners Bowling and Abbott, the trial court sentencing entries stated that "if post release control is imposed, for violation of post release control conditions, the Adult Parole Authority or Parole Board could * * * return defendant to prison * * *."

{¶ 51} While these entries erroneously refer to discretionary instead of mandatory postrelease control, they contain significantly more information than any of the sentencing entries held insufficient by the court in *Hernandez* (no reference to postrelease control), *Adkins* (no reference to postrelease control), and *Gensley* (vague reference about petitioner's understanding of possible penalties). Consequently, the sentencing entries are sufficient to afford notice to a reasonable person that the courts were authorizing postrelease control as part of each petitioner's sentence. A reasonable person in the position of any of the petitioners would have had sufficient notice that postrelease control could be imposed following the expiration of the person's sentence. Any challenge to the propriety of the sentencing court's imposition of postrelease control in the entries could have been raised on appeal. The same could not be said about the sentencing entries at issue in *Hernandez, Adkins,* and *Gensley*.

{¶ 52} This conclusion is consistent with the preeminent purpose of R.C. 2967.28 that offenders subject to postrelease control know at sentencing that their liberty could continue to be restrained after serving their initial sentences. Cf. *Hernandez,* 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶ 31 ("In this case, neither the trial judge, the prosecutor, nor the defense counsel advised the defendant at the hearing, or in a journal entry, that his liberty would continue to be restrained after he served his sentence. That omission violated not only the statute, but the spirit of the changes in criminal sentencing underlying Senate Bill 2 [146 Ohio Laws, Part IV, 7136]").

## Conclusion

{¶ 53} The petitioners' sentencing entries, although they mistakenly included wording that suggested that imposition of postrelease control was discretionary, contained sufficient language to authorize the Adult Parole Authority to exercise postrelease control over the petitioners. Consequently, in accordance with our general precedent, habeas corpus is not available to contest any error in the sentencing entries, and petitioners have or had an adequate remedy by way of appeal to challenge the imposition of postrelease control. Accordingly, we deny the writ.[1]

Writ denied.

---

1. We deny the motion for leave to file a memorandum in support of petitioners' response to return of writ. Respondent's motion for leave to file a reply to petitioners' response to the return is rendered moot by our judgment.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

PFEIFER, J., concurs in judgment only.

LANZINGER, J., dissents.

---

**LANZINGER, J., dissenting.**

{¶ 54} I respectfully dissent from the denial of the writ in this case. The question here is how accurate a trial court must be in notifying a defendant about postrelease control. I would answer that for notification to be proper, a defendant subject to mandatory postrelease control must be informed that postrelease control is mandatory, rather than discretionary, with the parole authority. Because none of the 12 petitioners were so notified in their cases, I would grant the writ.

{¶ 55} The 12 petitioners are currently in prison for violating their postrelease-control terms. Although all were subject to mandatory terms of postrelease control based upon their underlying convictions, they all claim they did not receive adequate notice of postrelease control in the sentencing entries issued by the trial courts. In denying the writ, the majority concludes that "[t]he petitioners' sentencing entries, although they mistakenly included wording that suggested that imposition of postrelease control was discretionary, contained sufficient language to authorize the Adult Parole Authority to exercise postrelease control over the petitioners."

{¶ 56} Previously, this court has explained the importance of notification in criminal cases. "[I]n order to properly impose a sentence in a felony case, a trial court must consider and analyze numerous sections of the Revised Code to determine applicability and must provide notice to offenders at the sentencing hearing and incorporate that notice into its journal entry." *State v. Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 9. With respect to community-control violations, we have stated that "[w]hen an offender violates community control conditions *and that offender was not properly notified of the specific term that would be imposed,* an after-the-fact reimposition of community control would totally frustrate the purpose behind [statutory] notification, which is to make the offender aware *before a violation* of the specific prison term that he or she will face for a violation." (Emphasis sic.) *State v. Brooks,* 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837, ¶ 33.

{¶ 57} The petitioners in this case may have received some notice of the possibility of postrelease control, but the notice they received was neither proper nor adequate. Proper notification concerning postrelease control for these

petitioners would have stated that postrelease control was mandatory, not just a possibility. Defendants are to be informed of the exact consequences of a conviction. See *Hernandez v. Kelly* (2006), 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, at ¶ 31 (stating that the objective of Ohio's sentencing laws is to ensure all interested parties "know precisely the nature and duration of the restrictions that have been imposed by the trial court on the defendant's personal liberty"). This includes statements by the trial court about whether postrelease control is optional or mandatory and how long it will last. I disagree with the majority view that mere substantial compliance is sufficient.

{¶ 58} This court's opinion in *Hernandez* supports petitioners' claims. Like petitioners, Hernandez was not notified properly of mandatory postrelease control at his initial sentencing although he had been told that "he was 'being sent to prison and placed on post-release control by the Parole Board for a period of up to five years.'" Id. at ¶ 2. He appealed and was resentenced, but postrelease control was not mentioned during resentencing. Id. at ¶ 4. After a seven-year prison term, the parole authority imposed five years of postrelease control, which Hernandez violated and for which he was returned to prison. Id. at ¶ 5–6. When he filed a writ of habeas corpus, seeking release from prison and from postrelease control, we granted the writ rather than remanding for resentencing. In granting the writ, we emphasized the importance of proper notification to defendants of the penalties they would face. Id. at ¶ 31.

{¶ 59} The length of time ordered for postrelease control and whether that time will be optional or mandatory are important factors for a defendant to know as part of the penalty imposed and, in my view, should be part of the defendant's notification. I conclude that the improper notifications to petitioners did not adequately inform them of the postrelease-control conditions that they faced and, therefore, I would grant the writ.

---

Gerhardstein, Branch & Laufman Co., L.P.A., and Alphonse A. Gerhardstein; and Ohio Justice & Policy Center and David A. Singleton, for petitioners.

Jim Petro, Attorney General, and M. Scott Criss, Assistant Attorney General, for respondent.