OPINION
{¶ 1} On May 25, 2006, Appellant, Frank Susany, was arrested for operating a motor vehicle while intoxicated in Canfield, Ohio. During the booking process, Appellant repeatedly offered the arresting officer money in exchange for a "break." As a result, Appellant was also charged with bribery in violation of R.C. 2921.02(A), a third degree felony. (June 6, 2006, Complaint.) This appeal involves Appellant's attempt to withdraw his guilty plea and involves an alleged sentencing error. Based on the record here, the trial court did not err and Appellant's conviction and sentence are both affirmed.
 {¶ 2} Following his arrest in this matter, Appellant executed a waiver of indictment and a bill of information charging him with one count of bribery in violation of R.C. 2921.02(C), (E), a third degree felony. (Oct. 6, 2006, Waiver of Indictment; Bill of Information.) On October 11, 2006, he pleaded guilty to bribery in violation of R.C. 2921.02(C), (E). (Oct. 11, 2006, Judgment Entry.) Following his plea, he was sentenced to a three-year term of incarceration. (Dec. 18, 2006, Judgment Entry.) We note that while he was originally charged with a violation of R.C. 2921.02(A), he was indicted on and pleaded guilty to a violation of R.C. 2921.02(C).
 {¶ 3} Appellant subsequently filed a combined motion to withdraw his guilty plea, or in the alternative, he requested a new sentencing hearing. (Jan. 10, 2007, Motion to Withdraw Guilty Plea.) He alleged that his guilty plea was not made knowingly, intelligently, and voluntarily because the trial court did not advise him of the nature of the charged offense nor did it inform him of the potential maximum *Page 2 
penalty. He also argued that he was never advised that he was pleading guilty to a violation of R.C. 2921.02(C), and not R.C. 2921.02(A) as originally charged.
 {¶ 4} The trial court denied his motion to withdraw the plea or for a new sentencing hearing on January 11, 2007. Appellant timely filed a notice of appeal from this decision and the December 18, 2006, sentencing entry. We initially granted Appellant a temporary stay and ordered him released pending further order. (Jan. 12, 2007, Journal Entry.) After a hearing on the issue, we vacated the temporary stay and denied Appellant's motion for stay of execution of sentence pending appeal, and ordered him to immediately report to serve his sentence. (Feb. 8, 2007, Journal Entry.)
 {¶ 5} On appeal, Appellant raises three assignments of error. In these, he argues that his waiver of indictment was invalid; that the bill of information failed to charge him with a crime; that his guilty plea was not knowingly, voluntarily, or intelligently made; and that the trial court failed to notify him of all the terms of his postrelease control. However, a review of the record establishes that Appellant was fully aware of the nature of the charges against him and he was fully advised that he was subject to postrelease control at his plea agreement and sentencing hearings.
 {¶ 6} In his first assignment of error Appellant alleges:
 {¶ 7} "THE APPELLANT'S WAIVER OF INDICTMENT AND AGREEMENT TO PROCEED BY A BILL OF INFORMATION WAS INVALID AS THE TRIAL COURT FAILED TO COMPLY WITH THE REQUIREMENTS OF OHIO REVISED *Page 3 CODE § 2941.02.1 AND CRIM. R. 7 AND THE INFORMATION FAILED TO PROPERLY CHARGE THE APPELLANT WITH A CRIME."
 {¶ 8} Appellant argues that the trial court failed to comply with R.C.2941.021 and Crim.R. 7 because it failed to advise him of the nature of the charge against him. In this argument he alleges that there was an unexplained change of the charged offense.
 {¶ 9} R.C. 2941.021, prosecution by information, states:
 {¶ 10} "Any criminal offense which is not punishable by death or life imprisonment may be prosecuted by information filed in the common pleas court by the prosecuting attorney if the defendant, after he has beenadvised by the court of the nature of the charge against him and of his rights under the constitution, is represented by counsel or has affirmatively waived counsel by waiver in writing and in open court, waives in writing and in open court prosecution by indictment." (Emphasis added.)
 {¶ 11} Crim.R. 7(A), use of indictment or information, states in pertinent part:
 {¶ 12} "A felony that may be punished by death or life imprisonment shall be prosecuted by indictment. All other felonies shall be prosecuted by indictment, except that after a defendant has been advisedby the court of the nature of the charge against the defendant and of the defendant's right to indictment, the defendant may waive that right in writing and in open court." (Emphasis added.)
 {¶ 13} Appellant's argument is based on the fact that he was originally charged in Mahoning County Area Court No. 5, Canfield Ohio, with bribery in *Page 4 
violation of R.C. 2921.02(A), a third degree felony. (June 6, 2006, Complaint.) After he was bound over to the Mahoning County Court of Common Pleas, Appellant signed a waiver of indictment and a bill of information charging him with one count of bribery in violation of R.C.2921.02(C), also a third degree felony. (Oct. 6, 2006, Waiver of Indictment; Bill of Information.) The waiver of indictment was also signed by Appellant's counsel and the prosecuting attorney. Appellant later pleaded guilty to bribery in violation of R.C. 2921.02(C). (Oct. 11, 2006, Plea of Guilty; Oct. 11, 2006, Judgment Entry.)
 {¶ 14} Appellant argues that because of this change, the trial court failed to advise him of the nature of the charges against him in compliance with Crim.R. 7(A) and R.C. 2941.021. He claims that his conviction rests on an improper foundation and it must be reversed.
 {¶ 15} Appellant directs our attention to Wells v. Sacks (1962), 115 Ohio App. 219, 222, 184 N.E.2d 449, in support of his argument. He argues that Wells stands for the proposition that any waiver pursuant to R.C. 2941.021 must be strictly construed. He alleges that Wells requires that a defendant, represented by counsel, be advised in open court and in writing of his constitutional rights and the nature of the charges against him and that the defendant must waive any prosecution by indictment in writing and in open court. Id. at 223.
 {¶ 16} Wells involved an action for habeas corpus filed by an inmate who was seeking his release from prison. The petitioner inWells argued that his indictment was void since he signed his waiver of indictment under the belief that the waiver was *Page 5 
authorizing the trial court to try his case. He was not represented by counsel at the time. Id. at 221.
 {¶ 17} In analyzing R.C. 2941.021, Wells stressed that a proper waiver of indictment is essential to a court's subject matter jurisdiction. Id. at 223. Further, given the nature of the constitutional right of indictment, the requirements in R.C. 2941.021 must be strictly construed. Id. Wells subsequently concluded that based on the evidence, the petitioner did not understand the nature of the waiver that he had signed. Id. at 224. Thus, the waiver was invalidated.
 {¶ 18} In State v. Linton (Sept. 16, 1999), 5th Dist. No. 99 CA 10, the court of appeals distinguished Wells, supra, and acknowledged subsequent changes in the law. The defendant in Linton argued in his direct appeal that he was prejudiced when the trial court failed to advise him of the nature of the charges against him before he signed his waiver of indictment. The record in Linton revealed that the defendant was fully aware of the nature of the pending charges against him. Although the trial court did not specifically inform the defendant of the nature of the charges at the plea hearing, the waiver itself stated that he had been advised of the pending charges and, "that he freely, voluntarily and knowingly signed the waiver." Id. at 2.
 {¶ 19} Linton further distinguished Wells, indicating that it was, "inapplicable because waiver and plea proceedings are now reviewed for `substantial compliance' and are not to be `strictly construed.'" Id. at 3. Since Linton executed the waiver of prosecution by indictment, and this waiver stated that he was aware of the nature of *Page 6 
the charges against him and that he had knowingly, voluntarily, and intelligently signed the form, the court of appeals found that there was substantial compliance with Crim.R. 7(A). Id.
 {¶ 20} In State v. Moore (1977), 62 Ohio App.2d 69, 72,403 N.E.2d 1000, the Sixth District Court of Appeals also distinguishedWells, supra. The court explained that the defendant in Wells
unknowingly signed a waiver of his rights and pleaded guilty without legal representation. Further, the state did not dispute Mr. Wells' misunderstanding as to his waiver. Unlike Wells, Moore was represented by counsel at the time of signing. Further, the record clearly divulged that his plea was knowingly, intelligently, and voluntarily entered.
 {¶ 21} The record in this case reveals that Appellant was fully aware of the charges against him at the time he signed his waiver of indictment and at the time of his guilty plea. It is undisputed that Appellant was initially charged with bribery, in violation of R.C.2921.02(A), a felony of the third degree. This subsection states:
 {¶ 22} "(A) No person, with purpose to corrupt a public servant or party official, or improperly to influence him with respect to thedischarge of his duty, whether before or after he is elected, appointed, qualified, employed, summoned, or sworn, shall promise, offer, or give any valuable thing or valuable benefit." (Emphasis added.)
 {¶ 23} Shortly thereafter, Appellant executed a waiver of indictment and a bill of information that clearly stated he was now charged with bribery in violation of R.C. *Page 7 2921.02(C), which is also a third degree felony. (Oct. 6, 2006, Waiver of Indictment; Bill of Information.)
 {¶ 24} Appellant subsequently pleaded guilty to bribery. Appellant, his counsel, and the assistant prosecuting attorney signed this plea agreement, which also clearly provided that the charged offense was a violation of R.C. 2921.02(C). (Oct. 11, 2006, Plea of Guilty; Oct. 11, 2006, Judgment Entry.) This preprinted guilty plea form stated in part,
 {¶ 25} "I, Frank Susany, BEING BEFORE THIS COURT WITH MY COUNSEL, * * * REPRESENT TO THE COURT THAT I DESIRE TO WITHDRAW MY FORMER PLEA OF NOT GUILTY AND HEREBY ENTER A PLEA OF GUILTY TO THE FOLLOWING CHARGE AND/OR SPECIFICATION(S):
 {¶ 26} "BRIBERY 2921.02(C)(E) F3
 {¶ 27} "1. MY COUNSEL HAS ADVISED ME AND I FULLY UNDERSTAND THE NATURE OF THE CHARGES AGAINST ME AND THE ELEMENTS CONTAINED HEREIN. * * *
 {¶ 28} "3. I FURTHER UNDERSTAND * * * I COULD BE SENTENCED FOR A [MAXIMUM] TERM OF:
 {¶ 29} "* * *
 {¶ 30} "Bribery 5 yrs $10,000 * * *" (Oct. 11, 2006, Plea of Guilty.)
 {¶ 31} R.C. 2921.02(C) provides:
 {¶ 32} "(C) No person, with purpose to corrupt a witness orimproperly to influence him with respect to his testimony in an officialproceeding, either before or *Page 8 
after he is subpoenaed or sworn, shall promise, offer, or give him or another person any valuable thing or valuable benefit." (Emphasis added.)
 {¶ 33} Both of these subsections require that the violation be committed with the purpose to corrupt. However, subsection A involves the intent to corrupt a public servant with regard to his or her discharge of duty. On the other hand, R.C. 2921.02(C) involves the intent to corrupt or influence a witness with respect to his or her testimony in an official proceeding. Both are felonies of the third degree and subjected Appellant to the same penalties.
 {¶ 34} Appellant argues that he was given a harsher sentence for his alleged violation of R.C. 2921.02(C) based on the trial court judge's comments at sentencing. The sentencing judge stated in part:
 {¶ 35} "[W]e've had a lot of hurt in this valley, in our bar association, from the bench, from the bar, from people, who, whether boasting or whether truthful, offer bribes to affect an outcome in a case. And I wonder what would have happened had the police officer said yes. * * * And this type of conduct in my heart undermines what we do in our legal system. The message I would send, I believe, if I did anything other than what I plan on doing would send a message that it's okay to conduct business as usual in Mahoning County." (Dec. 12, 2006, Sentencing Tr., pp. 11-12.)
 {¶ 36} Contrary to Appellant's claims, however, the sentencing judge's comments could apply equally to R.C. 2921.02(A) and (C), since both require the purpose to influence either the outcome of a proceeding or a public servant's *Page 9 
discharge of duty. In fact, the judge's comments are arguably more applicable to a violation of R.C. 2921.02(A) because it specifically involves a public official whereas R.C. 2921.02(C) involves any witness in an official proceeding.
 {¶ 37} It appears that both subsections arguably were equally applicable in Appellant's case, since the officer would have been a witness in Appellant's bribery trial had a plea agreement not been reached. Further, his sentence was not affected by the allegedly unexplained switch from a violation of subsection A to subsection C. Regardless, Appellant was fully aware of the nature of the charges against him. He, along with his counsel, signed three separate court documents that reflected that he was charged with a violation of R.C.2921.02(C).
 {¶ 38} Furthermore, the trial court's record contains a copy of the Canfield Police Department Incident Report, which summarizes the facts and circumstances that resulted in Appellant's bribery charge. And, as will be discussed under another assignment, Appellant openly acknowledged that he knew the exact nature of his crime.
 {¶ 39} As in Moore, supra, Appellant was represented by counsel at the time he executed both the waiver and the plea, and the record reflects that his plea was knowingly, intelligently, and voluntarily entered. Accordingly, Appellant's first assignment of error lacks merit and is overruled.
 {¶ 40} Appellant's second assignment of error asserts:
 {¶ 41} "THE TRIAL COURT FAILED TO SUBSTANTIALLY COMPLY WITH CRIM. R. 11 AND, THEREFORE, ERRED IN ACCEPTING THE APPELLANT'S *Page 10 
GUILTY PLEA. FURTHER, THE APPELLANT'S PLEA WAS BASED ON MISTAKEN OR FALSE INFORMATION. AS SUCH, THE DEFENDANT'S GUILTY PLEA WAS NOT KNOWING, INTELLIGENT AND VOLUNTARY. AS A RESULT, THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO WITHDRAW HIS PLEA OF GUILTY."
 {¶ 42} Appellant sought to withdraw his plea after he was sentenced to three years in prison. He argues that the trial court should have permitted the withdrawal of his guilty plea since the trial court failed to ascertain on the record whether he understood the nature of the charges against him and also failed to inform him of the effect of his guilty plea and the maximum penalty that he faced in compliance with Crim.R. 11(C).
 {¶ 43} Crim.R. 11 provides in part:
 {¶ 44} "(C) Pleas of guilty and no contest in felony cases.
 {¶ 45} "* * *
 {¶ 46} "(2) In felony cases the court * * * shall not accept a plea of guilty * * * without first addressing the defendant personally and doing all of the following:
 {¶ 47} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of themaximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing. *Page 11 
 {¶ 48} "(b) Informing the defendant of and determining that thedefendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 {¶ 49} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself." (Emphasis added.)
 {¶ 50} Again, a guilty plea must be made voluntarily, intelligently, and knowingly. A defendant should only enter a plea of guilty with full knowledge and understanding of the consequences of his or her plea.State v. Horch, 154 Ohio App.3d 537, 538, 2003-Ohio-5135,797 N.E.2d 1051, citing State v. Engle (1996), 74 Ohio St.3d 525, 527,660 N.E.2d 450. A court must assess all of the circumstances surrounding the plea in determining whether it was voluntary. State v. Calvillo (1991),76 Ohio App.3d 714, 719, 603 N.E.2d 325.
 {¶ 51} Post-sentence motions to withdraw a guilty plea are generally filed because a defendant wishes to withdraw his or her plea after the issuance of an unfavorable sentence. Thus, they are not freely granted.State v. Mushrush (1999), 135 Ohio App.3d 99, 733 N.E.2d 252, appeal not allowed 87 Ohio St.3d 1406, 716 N.E.2d 1168. Crim.R. 32.1 governs a motion to withdraw a guilty plea and states in pertinent part: *Page 12 
 {¶ 52} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."
 {¶ 53} Thus, Appellant needed to establish that there was some manifest injustice inherent in his plea to warrant withdrawal, since he sought to withdraw his guilty plea only after his sentence was imposed.State v. Smith (1977), 49 Ohio St.2d 261, 361 N.E.2d 1324, paragraph one of the syllabus.
 {¶ 54} In State v. Cook, 3rd Dist. No. 12-01-15, 2002-Ohio-2846, the court found that the defendant had demonstrated manifest injustice warranting the withdrawal of his post-sentence guilty plea. This determination was based on the fact that the defendant's attorney indicated at the plea hearing that he was eligible for judicial release in six months. The trial court noted in its judgment entry that the defendant's prison term was not mandatory. Id. at ¶ 3-4. Notwithstanding, the defendant's term was imposed under a statute that required a mandatory prison term without the possibility of judicial release. Id. at ¶ 12. Because it was clear that the defendant received incorrect information about the sentence prior to making his plea, that plea was warranted based on the manifest injustice that could be established on the record.
 {¶ 55} In State v. Razo, 9th Dist. No. 05CA008639, 2005-Ohio-3793, the court of appeals held that the defendant failed to establish manifest injustice. The defendant argued that the trial court erred in denying his motion to withdraw his guilty *Page 13 
plea without conducting a hearing. Appellant alleged that his trial counsel was ineffective for his failure to interview an alleged alibi witness, and as such, he should have been permitted to withdraw his guilty plea. Razo's arguments, however, were unsubstantiated by the record and did not support his argument that a manifest injustice occurred. Id. at ¶ 14-16.
 {¶ 56} As to Appellant's claims that he was not fully advised of his possible sentence because he was not fully informed of all aspects of postrelease control, again, Appellant must show that some failure on the part of the court created a manifest injustice in this matter. The defendant in State v. Imburgia, 8th Dist. No. 87917, 2007-Ohio-390, sought to withdraw his guilty plea before his sentence was imposed. Hence, his motion was held to a much lower standard than that which requires a showing of manifest injustice. He argued to the trial court and on appeal that the trial court erred in failing to advise him of the mandatory nature of his postrelease control. His request was denied, since Crim.R. 11(C)(2)(a) does not involve the waiver of a constitutional right, and thus, substantial compliance is sufficient. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." Id. at ¶ 7, quoting State v.Nero (1990), 56 Ohio St.3d 474. Since the defendant was told he was subject to postrelease control, just not told it was mandatory, the legislative purpose was satisfied because the defendant was aware that his liberty could be further restrained after serving his initial sentence. Id. at ¶ 11, 16. *Page 14 
 {¶ 57} In addition to his argument the trial court failed to completely inform him of all aspects of postrelease control, Appellant also claims that he did not fully understand the nature of the charge against him or the full ramifications of his possible sentence before he entered his guilty plea. However, it has been held that:
 {¶ 58} "In order for a trial court to determine that a defendant in a criminal case understands the nature of the charge to which he was entering a guilty plea, it is not always necessary that the trial court advise the defendant of the elements of the crime, or to specifically ask the defendant if he understands the charge, so long as the totality of the circumstances are such that the trial court is warranted in making a determination that the defendant understands the charge."State v. Rainey (1982), 3 Ohio App.3d 441, 446 N.E.2d 188, paragraph one of the syllabus.
 {¶ 59} A review of the plea agreement in this case reveals that Appellant was represented by counsel at the time he entered into the agreement. Appellant pleaded guilty to bribery, a violation of R.C.2921.02(C). In exchange, the state agreed to stand silent at sentencing. The plea agreement indicated, in part, that Appellant was fully aware of the nature of the charges against him and the elements of the offense. The agreement also indicated that Appellant was aware that the maximum penalty was five years in prison and a $10,000 fine. (Oct. 11, 2006, Plea of Guilty Pursuant to Crim.R. 11 .(F).)
 {¶ 60} A review of the plea hearing transcript reveals that Appellant was asked on the record by the trial court judge whether he was aware of the elements that make up the charged offense. Appellant responded that his attorney had, "explained *Page 15 
it to me many times; we went over it." (Oct. 10, 2006, Plea to Bill of Information Tr., p. 4.) The court then indicated it would accept Appellant's written waiver of indictment finding that he had, "appeared in open court with counsel, that he has knowingly, intelligently and voluntarily waived his right to have his case presented to the Mahoning County grand jury, that he has elected to proceed with this bill of information." (Oct. 10, 2006, Plea to Bill of Information Tr., p. 4.)
 {¶ 61} Thereafter, the trial court judge went over Appellant's constitutional rights, and Appellant confirmed that he understood that he was giving up all of his outlined rights. (Oct. 10, 2006, Plea to Bill of Information Tr., pp. 4-6.)
 {¶ 62} Appellant also acknowledged that he understood that he would be subject to up to three years of postrelease control. (Oct. 10, 2006, Plea to Bill of Information Tr., p. 7.) The record reveals the following discussion between Appellant and the trial court:
 {¶ 63} "THE COURT: Do you understand if I accept your plea of guilty, I can proceed to judgment and sentence? And for this offense, you could receive up to five years in prison?
 {¶ 64} "THE DEFENDANT: Yes.
 {¶ 65} "THE COURT: You could also be fined up to $10,000?
 {¶ 66} "THE DEFENDANT: Yes.
 {¶ 67} "THE COURT: Do you understand that?
 {¶ 68} "THE DEFENDANT: Yes *Page 16 
 {¶ 69} "THE COURT: You are eligible for community control. That does not mean you'll get it. It's up to the court to determine what the penalty and what the sentence will be. Do you understand that?
 {¶ 70} "THE DEFENDANT: Yes, I do.
 {¶ 71} "THE COURT: I'm obligated to tell you under law if you did go to prison for this case, upon your release from prison the Department of Rehabilitation and Corrections could place you on additional supervision. That is called post-release control. Do you understand that?
 {¶ 72} "THE DEFENDANT: Yes, I do.
 {¶ 73} "THE COURT: If that occurred, the supervision could last up to three years. And if you did anything to violate that supervision, the Adult Parole Authority could send you back to prison in this case for a total of up to another two and a half years. Do you understand that?
 {¶ 74} "THE DEFENDANT: Yes, I do." (Oct. 10, 2006, Plea to Bill of Information Tr., pp. 6-7.)
 {¶ 75} Further, the assistant prosecuting attorney indicated at the sentencing hearing that Appellant agreed to plead guilty to one count of bribery. In exchange, the state agreed to stand silent at his sentencing hearing. (Jan. 12, 2007, Tr., p. 2.)
 {¶ 76} Thereafter, Appellant's counsel was permitted to comment on the presentence investigation report prepared for Appellant. Counsel indicated that he was disappointed with the report, since it recommended that Appellant be sentenced to prison based on his past record. Evidently, Appellant had previously served 12 *Page 17 
years in prison. (Jan. 12, 2007, Tr., p. 3.) Counsel then attempted to dismiss Appellant's behavior in this case based on the fact that he was intoxicated at the time he offered the bribe. (Jan. 12, 2007, Tr., p. 4.)
 {¶ 77} Appellant also made a statement on his own behalf indicating: "[Y]es, I was drunk; and, yes, I said to the cop, I'll give you five if you forget about this. I was drunk. Did I mean it? Maybe at the time, no; maybe at the time, yes. But I did it. * * * Would I do it again? No. Do I regret it? Yes." (Jan. 12, 2007, Tr., p. 6.) Following the sentencing hearing, the trial court ordered Appellant to serve a three-year term in prison.
 {¶ 78} Contrary to Appellant's claims, it appears from this record that he was fully aware of the nature of the charges against him. Although the elements of the offense were not specifically given during the plea hearing, Appellant's plea agreement stated that he was advised and aware of the nature of the charges against him and the record at the plea hearing supports this statement. Appellant even acknowledged that he had reviewed the elements many times with counsel. Further, Appellant acknowledged on the record at his sentencing hearing that the charged offense arose from his offer to pay the arresting officer money.
 {¶ 79} The record also supports the fact that Appellant was aware of the maximum penalty that he faced, including possible postrelease control. The trial court substantially complied with Crim.R. 11 when it advised him that he could be subject to postrelease control. *Page 18 
 {¶ 80} Further, Appellant fails to direct our attention to any resultant prejudice in this case, and although our review may not reveal a perfect record, we find no prejudice here.
 {¶ 81} Accordingly, we find that Appellant was advised that he could be subject to postrelease control at his plea hearing. Appellant was fully aware of the nature of the charges as well as the maximum penalties that he faced. Once he received a three-year sentence, it appears that he was merely dissatisfied with his sentence. Thus, there is no manifest injustice on the record warranting withdrawal of his plea in this case. This assignment of error lacks merit and is overruled.
 {¶ 82} In Appellant's third and final assignment of error, he readdresses part of his second assignment of error:
 {¶ 83} "THE TRIAL COURT ERRED IN FAILING TO NOTIFY THE APPELLANT OF ALL TERMS OF HIS POST-RELEASE CONTROL AT SENTENCING."
 {¶ 84} In an argument similar to that found in his second assignment of error, Appellant alleges that the trial court failed to verbally advise him of the conditions of his postrelease control at his sentencing hearing in compliance with R.C. 2929.141, regarding the violation of a new felony during his postrelease control period. He also claims that the trial court's insertion of the requisite notice after the fact in its sentencing entry was impermissible. Appellant alleges that the trial court's failure requires us to vacate and remand his case for resentencing. *Page 19 
 {¶ 85} Appellant directs our attention to State v. Jordan (2004),104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, paragraph one of the syllabus, for the proposition that a sentencing judge must advise the offender at the sentencing hearing and in the sentencing entry of the terms of his or her postrelease control:
 {¶ 86} "When a trial court fails to notify an offender about postrelease control at the sentencing hearing but incorporates that notice into its journal entry imposing sentence, it fails to comply with the mandatory provisions of R.C. 2929.19(B)(3)(c) and (d), and, therefore, the sentence must be vacated and the matter remanded to the trial court for resentencing." Id. at paragraph two of the syllabus.
 {¶ 87} The Jordan Court further explained:
 {¶ 88} "While it is true that the Adult Parole Authority may exercise discretion in imposing postrelease control in certain cases, a sentencing trial court has no such discretion. Accordingly, if a trial court has decided to impose a prison term upon a felony offender, it is duty-bound to notify that offender at the sentencing hearing about postrelease control and to incorporate postrelease control into its sentencing entry, which thereby empowers the executive branch of government to exercise its discretion." Id. at ¶ 22.
 {¶ 89} In Watkins v. Collins, 111 Ohio St.3d 425, 2006-Ohio-5082,857 N.E.2d 78, the Ohio Supreme Court distinguished Jordan, supra, in part. The Watkins Court explained that the focus in Jordan was whether the defendants were advised of postrelease control at their respective sentencing hearings. In Watkins, however, the defendants were fully advised that they could be subject to postrelease control. The *Page 20 
problem was that the notice failed to advise them that the postrelease control was mandatory. Id. at ¶ 46.
 {¶ 90} Watkins noted that the preeminent purpose of R.C. 2967.28 was to ensure that defendants know at their sentencing that, "their liberty could continue to be restrained after serving their initial sentences." Id. at ¶ 52. Thus, the fact that the defendants were erroneously advised that their postrelease control was discretionary, and not mandatory, did not warrant habeas corpus relief. The sentencing court had at least informed the defendants that they were subject to some kind of postrelease control. Id. at ¶ 46.
 {¶ 91} Appellant alleges that the trial court failed to advise him of the extent of applicable postrelease control. He claims he was not advised at the sentencing hearing that he was subject to additional prison time if he were to commit a new felony while on postrelease control, pursuant to R.C. 2929.141. R.C. 2929.141, commission of new offense by parolee or releasee, states in part:
 {¶ 92} "(B) A person on release who by committing a felony violates any condition of parole, any post-release control sanction, or any conditions described in division (A) of section 2967.131 of the Revised Code that are imposed upon the person may be prosecuted for the new felony. Upon the person's conviction of or plea of guilty to the new felony, the court shall impose sentence for the new felony, the court may terminate the term of post-release control if the person is a releasee and the court may do either or both of the following for a person who is either a releasee or parolee regardless of whether the sentencing court or another court of *Page 21 
this state imposed the original prison term for which the person is on parole or is serving a term of post-release control:
 {¶ 93} "(1) In addition to any prison term for the new felony, impose a prison term for the violation. * * *
 {¶ 94} "(2) Impose a sanction under sections 2929.15 to 2929.18 of the Revised Code for the violation that shall be served concurrently or consecutively, as specified by the court, with any community control sanctions for the new felony."
 {¶ 95} Appellant fails to direct our attention to any holding which states that a defendant must be advised that upon the commission of a new offense, a defendant is subject to additional prison time for any felony committed while on postrelease control. There is no such requirement and failure to so advise a defendant will still result in substantial compliance with Crim.R. 11(C)(2)(a). State v. Lamb,156 Ohio App.3d 128, 2004-Ohio-474, 804 N.E.2d 1027, ¶ 16-17.
 {¶ 96} In the instant matter, the trial court stated to Appellant at his sentencing hearing the following:
 {¶ 97} "[U]pon your release from prison, the Department of Rehabilitation Corrections can place you on additional supervision known as post-release control. That supervision can last up to three years. And if you do anything to violate that supervision, the Adult Parole Authority can send you back to prison in this case for a total of up to another year-and-a-half." (Sentencing Tr., pp. 13-14.)
 {¶ 98} Thus, Appellant was aware after his sentencing hearing that he was subject to possible postrelease control. Further, Appellant's sentencing entry stated *Page 22 
that Appellant could face a new prison term for a new felony offense committed during postrelease control. (Dec. 18, 2006, Judgment Entry.)
 {¶ 99} A review of Appellant's plea hearing reveals that the trial court advised him that he would be subject to postrelease control, and Appellant acknowledged that he understood. (Oct. 10, 2006, Plea to Bill of Information Tr., p. 7.)
 {¶ 100} Based on the foregoing, Appellant was aware that he faced potential postrelease control. Although the sentencing court did not specify the precise extent of postrelease control or all of its variables at the sentencing hearing, resentencing is not warranted because Appellant was sufficiently advised that his, "liberty could continue to be restrained after serving [his] initial sentence* * *."Watkins, supra, at ¶ 52.
 {¶ 101} In conclusion, we find that all of Appellant's assignments of error lack merit, and we hereby affirm the trial court's decision in full.
Donofrio, J., concurs.
 Vukovich, J., concurs. *Page 1